NO. COA13-991

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

STATE OF NORTH CAROLINA

    v.                              Orange County
                                    No. 08CRS051242
LAURENCE ALVIN LOVETTE,
    Defendant.


    Appeal by defendant from judgment entered on or about 3
June 2013 by Judge R. Allen Baddour, Jr. in Superior Court,
Orange County.  Heard in the Court of Appeals 6 February 2014.


    *Attorney General Roy A. Cooper, III, by Assistant Attorney
    General Derrick C. Mertz, for the State.*

    *Cheshire Parker Schneider & Bryan, PLLC, by John Keating
    Wiles, for defendant-appellant.*


    STROUD, Judge.


    This is defendant's second appeal to this Court arising

from his conviction for the first degree murder of Eve Carson.

Defendant was originally sentenced, as required by North

Carolina law at that time, to life in prison without parole.  In

defendant's first appeal and based upon his motion for

appropriate relief, this Court vacated defendant's sentence of

life imprisonment without parole and sent his case back to the

trial court for resentencing based upon North Carolina General

Statute § 15A-1340.19A *et. seq.*, which is a new sentencing statute enacted by the North Carolina General Assembly in response to the United States Supreme Court's 2012 ruling in *Miller v. Alabama*, 567 U.S. ___, ___, 183 L.Ed. 2d 407, 421-24 (2012). On remand, the trial court held a new sentencing hearing, at which defendant presented evidence. The trial court then resentenced defendant under the new sentencing statute to life imprisonment without parole after making extensive findings of fact as to any potential mitigating factors revealed by the evidence. In this second appeal, defendant raises arguments as to the constitutionality of the new sentencing statute and as to the trial court's findings supporting its sentencing decision. We find no error, for the reasons as set forth more fully below.

## I. Background

The facts of this case may be found in *State v. Lovette*, ___ N.C. App. ___, 737 S.E.2d 432 (2013) ("*Lovette I*"), and we will not repeat them in detail. In summary, defendant and/or his cohort kidnapped a young woman, Eve Carson, in the night, held her as a hostage in her own car with a gun to her head, fondled her as she screamed, robbed her, remained unmoved as she begged for her life, shot her multiple times, left her body in the street, and then used her bank card. *Lovette I* at ___, 737

S.E.2d at 434-35. In *Lovette I*, this Court found no error in defendant's trial, at which the jury convicted him of first degree murder, first degree kidnapping, felonious larceny, felonious possession of stolen goods, and robbery with a dangerous weapon, but vacated defendant's sentence for first degree murder and remanded for a resentencing hearing based upon North Carolina General Statute § 15A–1340.19A *et seq. See id.* at ___, 737 S.E.2d at 436-42.

After a rehearing, the trial court entered judgment sentencing defendant to life imprisonment without parole. The trial court made "additional findings pursuant to N.C.G.S. Sect. 15A-1340.19C, which . . . [were] incorporated as part of the judgment" (footnote omitted):

> 1. The defendant was born November 17, 1990, and therefore was seventeen years, three months old at the time of the commission of these offenses.
>
> 2. Dr. James Hilkey (hereinafter, "Hilkey") could identify no evidence that the defendant was irretrievably corrupted.
>
> 3. The defendant was, and is, immature, but not in any way substantially different from other teens.
>
> 4. Though adopted, the defendant's home life and family dynamics were not extremely unusual. He was adept at taking advantage of an overly

permissive father and avoiding consequences from either his father or his mother, who was the more authoritarian parent. He was raised in a middle class household and did not lack resources.

5. Defendant's intelligence is above average. He excelled at school until about age 12. His father passed when defendant was 13, and his grades and attendance at school faltered significantly.

6. Defendant appears to have been influenced by his peers but not to an unusual degree.

7. Defendant suffered from no psychosis or other mental disorder.

8. There is no evidence that defendant failed to appreciate the risks or consequences of his actions.

9. Defendant suffered from no dependency on alcohol or illegal drugs.

10. After preparing his psychological profile of defendant, Hilkey concluded that there exists the possibility of rehabilitation for him, but could offer no certain prognosis.

11. Defendant has a lengthy juvenile record that exhibits a pattern of escalation of criminal activity.

12. In the events surrounding this conviction, defendant was an active participant in all phases, from procuring the vehicle used to drive to Chapel Hill, to the commission of the murder itself. Defendant appears to

have led his older co-defendant, Demario Atwater, through the commission of the crimes.

13. The active participation of the defendant in the act of murder in this case stands in stark contrast to the two juveniles in the *Miller* and *Jackson* cases, in which might be characterized as botched robberies in which the defendant either was not an active participant in the murder or was acting under the influence of impairing substances, among other distinctions. See <u>Miller v. Alabama</u>, 567 U.S. ___, 123 S. Ct. 2455, 183 L.Ed.2d 407 (2012).

14. This court has considered youth as a factor in assessing the proportionality of the punishment it imposes, and in an exercise of its informed discretion determines that any mitigating factors found above are substantially outweighed by the overwhelming absence of mitigating factors as well as the other factors found above. Based on that determination, the court concludes that the appropriate sentence in this case is life in prison without the possibility of parole.

15. Consistent with its prior orders, Court's Exhibit 1 (the pre-sentence investigation report), as well as Defendant's Exhibit 2 (Sentencing Memorandum of Hilkey) and Defendant's Exhibit 3 (raw data produced by Hilkey) shall be preserved under seal, to be opened only by order of the Court. Defendant's Exhibit 1 (Hilkey's CV) shall be made part of the file.

Defendant appeals.

II. Sentencing Statute

When defendant's first appeal, addressed in *Lovette I*, was pending before this Court, defendant filed a motion for appropriate relief ("MAR") specifically requesting a resentencing hearing based upon the change in the law which had occurred since his trial:

> Our General Assembly has enacted a remedy to address the Supreme Court's ruling in *Miller v. Alabama* in Senate Bill 635, "An Act to amend the state sentencing laws to comply with the United States Supreme Court Decision in *Miller v. Alabama*, which was signed into law by the Governor on July 12, 2012. S.L. 2012-148 (amending N.C. Gen. Stat. § 15A-1477(a)(1)).

In *Lovette I,* this Court discussed the United States Supreme Court's opinion in *Miller* and the North Carolina General Assembly's response:

> In his MAR, Defendant seeks a new sentencing hearing, citing *Miller*. In *Miller*, which was decided after Defendant was sentenced, the United States Supreme Court held that imposition of a mandatory sentence of life without the possibility of parole for a defendant who was under the age of eighteen when he committed his crime violates the Eighth Amendment's prohibition on cruel and unusual punishment. *Id.* at ___, 132 S.Ct. at 2460, 183 L.Ed.2d at 414–15. After noting scientific studies that reveal differences in brain function and other psychological and emotional factors between adults and juveniles, the Court held

that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.* at ___, ___, 132 S.Ct. at 2475, 183 L.Ed.2d at 418–19, 430.

In response to the *Miller* decision, our General Assembly enacted N.C. Gen.Stat. § 15A-1476 *et seq.* ("the Act"), entitled "An act to amend the state sentencing laws to comply with the United States Supreme Court Decision in *Miller v. Alabama.*" N.C. Sess. Law 2012-148.[1]

*Id.* at ___, 737 S.E.2d at 441.

This Court then discussed the details of the new statutory sentencing scheme and its retroactive application to defendant:

The Act applies to defendants convicted of first-degree murder who were under the age of eighteen at the time of the offense. N.C. Gen.Stat. § 15A-1340.19A. Section 15A-1340.19B(a) provides that if the defendant was convicted of first-degree murder solely on the basis of the felony murder rule, his sentence shall be life imprisonment with parole. N.C. Gen.Stat. § 15A-1340.19B(a)(1) (2012). In all other cases, the trial court is directed to hold a hearing to consider any mitigating circumstances, *inter alia*, those related to the defendant's age at the time of the offense, immaturity, and ability to benefit from rehabilitation. N.C.

---

[1] As noted by footnote in *Lovette I*, "[t]he Act became effective when passed on 12 July 2012. N.C. Sess. Law 2012-148, Section 3. Session Law 2012-148 designated this Act as sections 15A-1476 *et seq.*, but the Act was later redesignated and renumbered at the direction of the Revisor of Statutes and is now found at N.C. Gen.Stat. § 15A-1340.19A *et seq. Lovette I* at ___, 737 S.E.2d at 441.

Gen.Stat. §§ 15A-1340.19B, 15A-1340.19C. Following such a hearing, the trial court is directed to make findings on the presence and/or absence of any such mitigating factors, and is given the discretion to sentence the defendant to life imprisonment either with or without parole. N.C. Gen.Stat. §§ 15A-1340.19B(a)(2), 15A-1340.19C (a). "[N]ew rules of criminal procedure [such as the Act] must be applied retroactively 'to all cases, state or federal, pending on direct review or not yet final.'" *State v. Zuniga*, 336 N.C. 508, 511, 444 S.E.2d 443, 445 (1994) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649, 661 (1987)).

Here, as conceded by the State, the Act applies to Defendant, who was seventeen years old at the time of Eve Carson's murder and whose case was pending on direct appeal when the Act became law. In addition, Defendant's jury returned a verdict of guilty of first-degree murder on the basis of malice, premeditation, and deliberation, as well as the felony murder rule. Accordingly, we must vacate Defendant's sentence of life imprisonment without parole and remand to the trial court for resentencing as provided in the Act. Following a resentencing hearing, the trial court shall, in its discretion, determine the appropriate sentence for Defendant and make findings of fact in support thereof.

*Id.* at ___, 737 S.E.2d at 441-42 (footnote omitted). On remand the trial court then did just as defendant requested in his MAR and as this Court instructed in *Lovette I* when it sentenced defendant.

A.   Due Process

Upon remand, at the resentencing hearing, defendant for the first time raised an objection to being sentenced under the new sentencing statute based upon a claim of denial of due process. Defendant now contends that "the court erred when it overruled the defendant's objection to resentencing under the *new* sentencing statute because its application to the defendant violated the constitutional guarantees of due process and the law of the land." (Emphasis added.) (Original in all caps.) The State counters, *inter alia*, that defendant has waived his constitutional arguments by failure to raise them in his first appeal or in the MAR.

Despite the fact that defendant obtained the relief he requested in his prior appeal and MAR, in which he requested re-sentencing under what is now codified as North Carolina General Statute § 15A-1340.19A *et seq.*, defendant now argues that he was denied due process because during his trial, he was unaware of the new sentencing statute which did not yet exist. Defendant argues that when he was tried for first degree murder, the State proceeded upon theories of felony murder *and* murder with premeditation and deliberation; under the "old" sentencing statute, which was in effect when defendant was originally sentenced, a guilty verdict on either of those bases would

inevitably lead to a sentence of life imprisonment without parole. However, according to defendant, under the "new" sentencing statute, if defendant had been convicted for first degree murder *only* upon a predicate felony, and not upon premeditation and deliberation, he would have been sentenced to life imprisonment with parole.[2] If defendant had known this, he argues he might have conceded guilt of his underlying felonies that served as the predicate felonies for the theory of felony murder and focused his efforts more heavily on defending against premeditation and deliberation as a basis for the murder, because if the jury believed him on this issue, he might have been convicted on the basis of felony murder only and not on the basis of murder with premeditation and deliberation, thus giving him the eligibility for parole.

Based upon defendant's speculation and arguments which seek to apply legal standards used in capital punishment cases to this non-capital case, defendant contends the "lack of notice resulted in a denial of procedural due process, and the State cannot show the error harmless beyond a reasonable doubt." Defendant proposes two possible remedies to this violation, both

---

[2] North Carolina General Statute § 15A-1340.19A provides that "'life imprisonment with parole' shall mean that the defendant shall serve a minimum of 25 years imprisonment prior to becoming eligible for parole." N.C. Gen. Stat. § 15A-1340.19A (2012).

premised upon cases which address capital sentencing. Analogizing from *State v. Davis*, 290 N.C. 511, 227 S.E.2d 97 (1976), defendant claims that as the only sentence permitted

> by law at the time of the crime and trial in Mr. Lovette's case has been held unconstitutional and because the new statute cannot be applied retroactively consistent with the notice required by the federal Due Process Clause and the state Law of the Land Clause, U.S. Const., amend. XIV; N.C. Const., art. I, § 19, the only sentence that was constitutionally possible to be imposed upon him for homicide with malice at the time of his trial was "a sentence authorized upon conviction of the lesser included offense of second degree murder committed on 5 March 2008."

In the alternative, defendant proposes this Court remand to the trial court again "with instructions to impose a sentence of life imprisonment with parole consistent with N.C. Gen. Stat. § 15A-1340.19B(a)(1)(2012), where 'life imprisonment with parole' means that he "shall serve a minimum of 25 years imprisonment prior to becoming eligible for parole.' N.C. Gen. Stat. § 15A-1340.[19]A (2012)."

Defendant's arguments are based upon a series of speculations and assumptions about potential trial strategies and hindsight, which is reputed to be 20/20, although in this instance even hindsight is a bit blurry since there are so many unknowns. Essentially, defendant argues that *if* defendant had

known, he *may* have actually conceded guilt of his felonies upon which the theory of felony murder were predicated, argued more strenuously regarding murder with premeditation and deliberation, and the jury *may* not have convicted him on the grounds of murder with premeditation and deliberation,[3] and then he *could* have had the possibility of parole. We cannot base our decision on such speculation.

Defendant actually requested the very relief as to resentencing he was granted in his MAR to this Court. Even if defendant's speculative argument could have possibly had any legal merit, he could have raised it in his MAR. In other words, in his MAR in the prior appeal defendant argued that he should be sentenced under the new sentencing statute, but he could have also argued, although he did not, that even then sentencing him under the new sentencing statute would violate his constitutional due process rights because he was not aware of the new sentencing statute as the applicable law at the time of his trial, thus affecting his trial strategy. Defendant could have made an argument based on hindsight and speculation of this nature just as easily in the first appeal as this one as

---

[3] We note that there was overwhelming evidence regarding defendant's premeditation and deliberation, and defendant did not challenge his conviction on the basis of error in the jury's determination of this issue in his first appeal. *See Lovette I.*

it is not dependent upon any findings or conclusions made by the trial court on remand. We conclude that because defendant did not challenge this Court's opinion granting him the relief sought in his MAR, this Court's prior opinion is the law of the case and defendant may not challenge his resentencing under the new sentencing statute on the grounds of due process now. *See generally Wellons v. White*, ___ N.C. App. ___, ___, 748 S.E.2d 709, 720 (2013) ("The law of the case doctrine provides that when a party fails to appeal that order, the decision below becomes the law of the case and cannot be challenged in subsequent proceedings in the same case." (citation, quotation marks, and brackets omitted)). We overrule this argument.

B. Discretion of Trial Court in Sentencing

In *Lovette I*, we noted that under the new sentencing statute

> the trial court is directed to hold a hearing to consider any mitigating circumstances, *inter alia*, those related to the defendant's age at the time of the offense, immaturity, and ability to benefit from rehabilitation. N.C. Gen.Stat. §§ 15A-1340.19B, 15A-1340.19C. Following such a hearing, the trial court is directed to make findings on the presence and/or absence of any such mitigating factors, and is given the discretion to sentence the defendant to life imprisonment either with or without parole.

*Lovette I* at ___, 737 S.E.2d at 441. At the resentencing hearing, as directed by this Court as a result of *Lovette I*, the trial court heard evidence and made findings of fact.

Defendant argues that

> the sentence of life without parole for an offender who committed his offense before reaching the age of 18 is "likened" to the death penalty itself, *see Miller*, ___ U.S. at ___, 132 S. Ct. at 2463, 183 L. Ed. 2d 407; *cf. Graham*, 560 U.S. at ___, 130 S. Ct. at 2027, 176 L. Ed. 825. Thus, just as the guarantees of freedom from cruel and unusual punishment and due process, U.S. Const., amend. VIII, XIV; N.C. Const., art. I, §§ 19, 27, require provisions for "individualized sentencing" in death penalty cases for adults, *Woodson*, 428 U.S. at 304, 96 S. Ct. at 2991, 49 L. Ed. 2d 944 (1976) (Eight Amendment requires individualized sentencing, rather than mandatory sentencing, in death penalty proceedings), so *Miller* ultimately ruled against mandatory life imprisonment without parole for offenders convicted of homicide committed when under age 18.

Defendant then engages in a comparison of the new sentencing statute with capital punishment statutory sentencing, citing § 15A-2000, and concludes that "the new sentencing regime provides less guidance for the exercise of discretion in sentencing a minor in jeopardy of life imprisonment without parole . . . than our State provides for an adult burglar or even a Class I felon." But our capital sentencing statutes have no application

here. Although there is some common constitutional ground between adult capital sentencing and sentencing a juvenile to life imprisonment without parole, these similarities do not mean the United States Supreme Court has directed or even encouraged the states to treat cases such as this under an adult capital sentencing scheme.

Because the new sentencing statute grants the trial court more discretion than the capital sentencing statute, defendant argues that the new sentencing statute "unconstitutionally vests the sentencing judge with unbridled discretion, providing no standards for its exercise in violation of the constitutional guarantees of freedom from cruel and unusual punishment and of due process and the law of the land." (Original in all caps.) As in defendant's previous argument regarding due process, defendant had the opportunity to raise a facial challenge in his first appeal to the constitutionality of North Carolina General Statute § 15A-1340.19A *et. seq.* on the grounds that it fails to provide sufficient guidance for the exercise of the trial court's discretion, but he failed to do so. Again, in his first appeal, defendant requested that he be sentenced under the new sentencing statute without making any arguments that it was unconstitutional. This Court then granted defendant's request

and defendant made no motions seeking relief from either this Court or our Supreme Court.  The trial court followed the instructions provided by this Court in resentencing defendant pursuant to the new sentencing statute.  We therefore conclude that defendant may not raise a facial constitutional challenge to North Carolina General Statute  § 15A-1340.19A *et. seq.* at this point.

Although defendant does not make an as-applied constitutional argument in his brief, at oral argument and in his reply brief, defendant's counsel noted that defendant could not have made an as-applied constitutional challenge to the new sentencing statute before he was resentenced, since the statute had not yet been applied to him.  We agree with defendant that he could not have made an as-applied challenge to the new sentencing statute before he was resentenced.  Yet defendant's arguments are actually facial constitutional challenges, not as-applied challenges.  Defendant contends that the new sentencing statute is erroneous as written because it "vests the sentencing judge with unbridled discretion providing no standards[.]" Thus, according to defendant's argument, no matter how the trial court applied the new sentencing statute, its discretion would be "unbridled" due to the lack of "standards" provided by the

legislature within the statute; this is a facial challenge because defendant is arguing that no matter what the trial court's ultimate determination was, the new sentencing statute is unconstitutional because of the amount of discretion given to the trial court in making its determination. *See State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998) ("An individual challenging the facial constitutionality of a legislative act must establish that no set of circumstances exists under which the act would be valid." (citation, quotation marks, and brackets omitted)). Defendant does not argue that the trial court abused its discretion in either how it weighed or applied any mitigating factors as compared to each other or in light of the other facts of the case in coming to its ultimate decision to sentence defendant to life imprisonment without parole. Thus, to the extent defendant has raised a facial challenge to the new sentencing statute, he has failed to cite any authority in support of this argument. This argument is overruled.

### III. Findings of Fact

Defendant next challenges findings of fact 3, 4, and 6 based on sufficiency of the evidence to support the findings of fact.

A. Standard of Review

Defendant attempts to frame this argument under the standards of review applicable in capital sentencing of adults. Defendant argues that

> [b]ecause the sentence of life without parole for an offender who committed his offense before reaching the age of 18 is "likened" to the death penalty itself, *see Miller v. Alabama*, ___ U.S. ___, ___, 132 S. Ct. 2455, 2463, 183 L. Ed. 2d 407 (2012) ("*Graham* further likened life without parole for juveniles to the death penalty itself"); *cf. Graham v. Florida*, 560 U.S. ___, ___, 130 S. Ct. 2011, 2027, 176 L. Ed. 2d 825 (2010) ("life without parole sentences share some characteristics with death sentences that are shared by no other sentences"), the Defendant respectfully contends that, on analogy with our Supreme Court's review of a death penalty, this Court shall overturn the greater sentence of life without parole and impose in lieu thereof the lesser authorized sentence of life with parole "upon a finding that the record does not support the [trial court's] findings of any . . . circumstance or circumstances upon which the sentencing court based its sentence of [life without parole]." N.C. Gen. Stat. § 15A-2000(d)(2) (2012).

But again, capital sentencing statutes have no application in the context of this case. We see no reason to depart from our body of case law which has established that we review challenged findings of fact for competent evidence to support the finding. *See State v. Peterson*, 347 N.C. 253, 255, 491

S.E.2d 223, 224 (1997) ("[F]indings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." (citation and quotation marks omitted). Accordingly, we review each challenged finding of fact to see if it is supported by competent evidence; if so, such findings of fact "are conclusive on appeal[.]" *Id.*

B.   Findings of Fact 3, 4 and 6

Finding of fact 3 stated, "The defendant was, and is, immature, but not in any way substantially different from other teens." Dr. James Hilkey, an expert in forensic psychology, testified that defendant's immaturity was "typical for his age[.]" The challenged portion of finding of fact 4 stated, "Though adopted, the defendant's home life and family dynamics were not extremely unusual." While Dr. Hilkey did state that defendant was perhaps "spoiled[,]" even to an "extreme[,]" and that his parents relationship may have been "highly dysfunctional" to an "extreme[,]" he did not testify that defendant's "home life" or "family dynamics" were "extremely unusual[,]" but rather that a particular area or two of defendant's "home life and family dynamics" were extreme. Defendant's argument takes certain words used by Dr. Hilkey out of context. Overall, Dr. Hilkey's testimony supported a finding

that defendant's "home life and family dynamics" were not extremely unusual. Defendant grew up in a middle-class home with two parents, until his father died. Defendant's father had strongly disagreed with his mother on how to best care for him, with his father taking the route of "spoiler" and his mother that of "enforcer." Dr. Hilkey's testimony indicated that defendant's home life was not "perfect" but that is not unusual, as no one leads a perfect home life. Finding of fact 6 stated, "Defendant appears to have been influenced by his peers but not to an unusual degree." Dr. Hilkey testified that "*Like a lot of juveniles*, Mr. Lovett was quite and continues to be quite influenced by his peer group[,]" and "Mr. Lovett, *like many adolescents*, are highly susceptible to the influence of peers[.]" (Emphasis added.) We conclude that the challenged findings of fact were supported by competent evidence and overrule this argument.

IV. Findings as to "Irretrievable Corruption" and "Possibility of His Rehabilitation"

Lastly, defendant contends that

> the court erred when it sentenced the defendant to a term of imprisonment for life without parole, in violation of the constitutional guarantees against cruel and unusual punishment, when the unrebutted evidence presented to the court did not show that the defendant was irretrievably corrupt

and did show that the possibility of his rehabilitation existed.

(Original in all caps.) Defendant does not contend that a finding that he "was irretrievably corrupt" or had no "possibility of . . . rehabilitation" is required by the new sentencing statute for the trial court to sentence him to life imprisonment without parole, and in fact it is not. *See* N.C. Gen. Stat. §§ 15A-1340.19B; -1340.19C (2012) (stating that the trial court "shall consider any mitigating factors" but not providing that any particular factor beyond those defendant chooses to present are required for consideration by the trial court). But, defendant's argument read as a whole does seem to contend that without findings of irretrievable corruption and no possibility of rehabilitation the trial court should not have sentenced him to life imprisonment without parole. Thus, we consider *de novo* if the trial court's findings of fact, which we have already concluded are supported by competent evidence, support its conclusion of law. *See Peterson,* 347 N.C. at 255, 491 S.E.2d at 224 ("Conclusions of law that are correct in light of the findings are also binding on appeal.") (citations and quotation marks omitted); *State v. Simmons*, 201 N.C. App. 698, 701, 688 S.E.2d 28, 30 (2010) ("The trial court's conclusions of law are subject to *de novo* review on appeal.").

It is true that the trial court made findings regarding defendant *not* being "irretrievably corrupt" and the "possibility of [defendant's] rehabilitation[,]" but these findings of fact did not ultimately require the trial court to sentence defendant to a lesser sentence than life imprisonment without parole as the trial court could consider all of the factors and determine "whether, based upon all the circumstances of the offense and the particular circumstances of the defendant, the defendant should be sentenced to life imprisonment with parole instead of life imprisonment without parole." N.C. Gen. Stat. § 15A-1340.19C(a). Defendant has not demonstrated an abuse of discretion in how the trial court chose to weigh any factors as compared to each other nor in how the trial court weighed "all the circumstances of the offenses" in light of them. *See id.*

Defendant relies on *Miller v. Alabama* in arguing, "[T]he Supreme Court proceeded to make it clear that [life imprisonment without parole] should be 'uncommon' because of the difficulty of determining 'irreparable corruption' at a young age[.]" Defendant then quotes *Miller:*

> But given all we have said in *Roper*, *Graham*, and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this *harshest penalty will be uncommon*. That is

> especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age "between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the *rare juvenile offender whose crime reflects irreparable corruption*." *Roper*, 543 U.S. at 573, 125 S. Ct. 1183; *Graham*, 560 U.S. at ___, 130 S. Ct. at 2026-2027. Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison. *Miller*, ___ U.S. at ___, 132 S. Ct. at 2469, 183 L.Ed. 2d 407.

(Emphasis added.)

Defendant's argument takes the statement regarding "irreparable corruption" out of context and seemingly elevates it to a required finding, but this is simply one of the factors a trial court may consider. The findings of fact must support the trial court's conclusion that defendant should be sentenced to life imprisonment without parole, and a finding of "irreparable corruption" is not required, although it certainly may be a finding that a trial court might make, it did not in this case. What the Supreme Court actually required in *Miller* was that the trial court consider a defendant's age and its "hallmark features" and the circumstances of each case:

> To recap: Mandatory life without parole for a juvenile precludes consideration of his

chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

*Miller*, 567 U.S. at ___, 183 L.Ed. 2d at 423 (citations omitted).

Here, the trial court made findings of fact which are either not challenged on appeal, or which we have found to be supported by the evidence, as to each of the "hallmark features" noted by the Supreme Court. *Id.* Our only consideration is whether the findings support the trial court's conclusion of law that defendant should be sentenced to life imprisonment without possibility of parole. In *Miller*, in contrasting the cases of the two 14-year-old juveniles under consideration with juveniles

in prior cases, the Supreme Court contrasted some of these characteristics of juveniles:

> In light of *Graham's* reasoning, these decisions too show the flaws of imposing mandatory life-without-parole sentences on juvenile homicide offenders. Such mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it. Under these schemes, every juvenile will receive the same sentence as every other—the 17-year-old and the 14-year-old, the shooter and the accomplice, the child from a stable household and the child from a chaotic and abusive one. And still worse, each juvenile (including these two 14-year-olds) will receive the same sentence as the vast majority of adults committing similar homicide offenses—but really, as *Graham* noted, a greater sentence than those adults will serve. In meting out the death penalty, the elision of all these differences would be strictly forbidden. And once again, *Graham* indicates that a similar rule should apply when a juvenile confronts a sentence of life (and death) in prison.
>
> . . . .
>
> Both cases before us illustrate the problem. Take Jackson's [in *Graham*] first. As noted earlier, Jackson did not fire the bullet that killed Laurie Troup; nor did the State argue that he intended her death. Jackson's conviction was instead based on an aiding-and-abetting theory; and the appellate court affirmed the verdict only because the jury could have believed that when Jackson entered the store, he warned Troup that we ain't playin, rather than told his friends that I thought you all was playin. To be sure, Jackson learned on the way to the video store that his friend

> Shields was carrying a gun, but his age could well have affected his calculation of the risk that posed, as well as his willingness to walk away at that point. All these circumstances go to Jackson's culpability for the offense. And so too does Jackson's family background and immersion in violence: Both his mother and his grandmother had previously shot other individuals. At the least, a sentencer should look at such facts before depriving a 14-year-old of any prospect of release from prison.
>
> That is true also in Miller's case. No one can doubt that he and Smith committed a vicious murder. But they did it when high on drugs and alcohol consumed with the adult victim. And if ever a pathological background might have contributed to a 14-year-old's commission of a crime, it is here. *Miller's* stepfather physically abused him; his alcoholic and drug-addicted mother neglected him; he had been in and out of foster care as a result; and he had tried to kill himself four times, the first when he should have been in kindergarten. Nonetheless, Miller's past criminal history was limited—two instances of truancy and one of second-degree criminal mischief. That Miller deserved severe punishment for killing Cole Cannon is beyond question. But once again, a sentencer needed to examine all these circumstances before concluding that life without any possibility of parole was the appropriate penalty.

*Miller*, 567 U.S. at ___, 183 L.Ed. 2d at 422-24 (citations, quotation marks, brackets, and footnote omitted). In this comparison, the Supreme Court demonstrates how a court might weigh the "hallmark features" in sentencing juveniles. *Id.* at

___, 183 L.Ed. 2d at 422-24. Here, the trial court, particularly in findings of fact 12 and 13, reflects that it was guided by this analysis in weighing the factors presented by defendant.

Defendant has not demonstrated that the trial court abused its discretion in weighing the factors regarding his characteristics or the circumstances of the case. *See State v. Westall*, 116 N.C. App. 534, 551, 449 S.E.2d 24, 34 ("We also decline to hold that the trial judge abused his discretion in imposing the sentence in this case. The trial judge may be reversed for abuse of discretion only upon a showing that his ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision. It is not the role of an appellate court to substitute its judgment for that of the sentencing judge as to the appropriate length of the sentence. [S]o long as the punishment rendered is within the maximum provided by law, an appellate court must assume that the trial judge acted fairly, reasonably and impartially in the performance of his office. Furthermore, when the sentence imposed is within statutory limits it cannot be considered excessive, cruel or unreasonable. (citations omitted)), *disc. review denied*, 338 N.C. 671, 453 S.E.2d 185 (1994).

As noted by *Miller*, the "harshest penalty will be uncommon[,]" but this case is uncommon. *Miller*, 567 U.S. at ___, 183 L.E. 2d at 424. The trial court's findings support its conclusion. The trial court considered the circumstances of the crime and defendant's active planning and participation in a particularly senseless murder. Despite having a stable, middle-class home, defendant chose to take the life of another for a small amount of money. Defendant was 17 years old, of a typical maturity level for his age, and had no psychiatric disorders or intellectual disabilities that would prevent him from understanding risks and consequences as others his age would. Despite these advantages, defendant also had an extensive juvenile record, and thus had already had the advantage of any rehabilitative programs offered by the juvenile court, to no avail, as his criminal activity had continued to escalate. Defendant was neither abused nor neglected, but rather the evidence indicates for most of his life he had two parents who cared deeply for his well-being in all regards. *Miller* at ___, 183 L.Ed. 2d at 422 ("Just as the chronological age of a minor is itself a relevant mitigating factor of great weight, so must the background and mental and emotional development of a youthful defendant be duly considered in assessing his

culpability."). The trial court's findings fully support its conclusion, and this argument is overruled.

V. Conclusion

For the reasons as stated above, we find no error.

NO ERROR.

Judges CALABRIA and DAVIS concur.