IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-1121

 Filed: 15 August 2017

Pitt County, Nos. 13 CRS 50915–16

STATE OF NORTH CAROLINA

 v.

JAHRHEEL IKLE MAY

 Appeal by defendant from judgment entered 16 July 2015 by Judge W. Russell

Duke, Jr., in Pitt County Superior Court. Heard in the Court of Appeals 2 May 2017.

 Attorney General Joshua H. Stein, by Assistant Attorney General Joseph L.
 Hyde, for the State.

 W. Michael Spivey for defendant-appellant.

 BRYANT, Judge.

 Where the trial court failed to make statutorily required findings of fact

addressing statutory mitigating factors prior to sentencing juvenile defendant to life

imprisonment without the possibility of parole, we vacate the sentence imposed and

remand for a new sentencing hearing. Further, where the trial court had no

jurisdiction to enter findings of fact after defendant gave notice of appeal, we vacate

the order entered upon those findings.

 On 25 February 2013, a Pitt County grand jury indicted defendant Jahrheel

Ikle May on one count of first-degree murder and one count of armed robbery of
 STATE V. MAY

 Opinion of the Court

Anthony Johnson. The matter came on for jury trial during the 13 July 2015 criminal

session of Pitt County Superior Court, the Honorable W. Russell Duke, Jr., Judge

presiding.

 The evidence admitted at trial tended to show that on 2 January 2013, sixteen-

year-old defendant May discussed committing a robbery with his older cousin

Demetrius Smith: breaking into the home of a “pill dude” who lived in the same

Westpointe community of Greenville. Smith believed the “pill dude” had a lot of

prescription medication pills. Around 8:00 p.m., Smith drove to defendant’s home,

where defendant was sitting on the patio with two other men. Smith had intended

to talk with defendant about the robbery, but stopped short of doing so. “[M]e and

[defendant] were like, nah, we talking around too many people and we—we didn’t

know if the [pill] dude was home or not so we were just like forget it instead of taking

a chance.” But shortly afterwards, defendant said he needed to go to the store and

borrowed Smith’s car for “[p]robably 15, 10 minutes.” Following his return, Smith

heard sirens and asked defendant, “Did you do something with my car?” Defendant

responded that he did not.

 The evidence further showed that at about 8:20 p.m. that evening, two men

were observed “tussling” in front of a vehicle parked on Westridge Court. Gunshots

were fired. The larger of the two men crawled toward the door of a residence, while

the smaller man entered the vehicle and drove away. Law enforcement officers soon

 -2-
 STATE V. MAY

 Opinion of the Court

found Anthony Johnson deceased outside the residence on Westridge Court. Two

days later, defendant was arrested and charged with first-degree murder and armed

robbery.

 While in jail awaiting trial, defendant talked to an inmate about the events

leading to Johnson’s death. At trial, the inmate testified on behalf of the State to

conversations he had with defendant about the shooting, including details the police

had not made public. Defendant presented no evidence.

 Defendant was convicted of the first-degree murder of Johnson on the basis of

malice, premeditation and deliberation, and on the basis of the felony murder rule.

Defendant was also convicted of attempted robbery with a dangerous weapon.

 At sentencing, several witnesses testified on defendant’s behalf: defendant’s

guidance counselor; an assistant principal; a retired pastor, who was also a

correctional officer; a principal of the middle school defendant attended; defendant’s

mother; defendant’s father; and defendant’s grandmother. The witnesses testified

consistently that defendant was a popular student at school, an athlete, “captain

material,” “a good kid,” and an honors student taking advanced courses. The trial

court entered judgment on 16 July 2015 as follows: On the charge of attempted armed

robbery with a dangerous weapon, defendant was sentenced to a term of 64 to 89

months; on the charge of first-degree murder, defendant was sentenced to life

imprisonment without the possibility of parole. The sentences were to be served

 -3-
 STATE V. MAY

 Opinion of the Court

consecutively. Immediately after judgment was entered on 16 July 2015, defendant

gave oral notice of appeal.

 Almost a month later, on 11 August 2015, the trial court entered an order

making findings of fact based on N.C. Gen. Stat. § 15A-1340.19B to support its

determination that defendant should be sentenced to life imprisonment without the

possibility of parole, as opposed to a lesser sentence of life imprisonment with the

possibility of parole.

 _________________________________________

 On appeal, defendant argues the trial court erred by sentencing him to life

imprisonment without the possibility of parole, where the trial court failed to make

findings of fact and conclusions of law in support of the sentence. Defendant also

brings forth several other arguments—e.g., that there was insufficient evidence that

defendant was permanently incorrigible; that there was sufficient evidence to

demonstrate defendant’s crime was the result of transient immaturity; and that the

trial court failed to make findings as to all mitigating factors. However, based on our

holding as to defendant’s first argument, we do not address the remaining ones.

 Analysis

 Defendant argues that the trial court erred by failing to make findings of fact

on the presence of mitigating factors before sentencing him to life in prison without

 -4-
 STATE V. MAY

 Opinion of the Court

the possibility of parole, and further, the trial court lacked jurisdiction to make

findings after defendant gave notice of appeal. We agree.

 “The Eighth Amendment's prohibition of cruel and unusual punishment

‘guarantees individuals the right not to be subjected to excessive sanctions.’ ” Miller

v. Alabama, 567 U.S. 460, 469, 183 L. Ed. 2d 407, 417 (2012) (quoting Roper v.

Simmons, 543 U.S. 551, 560 (2005)). “In Miller . . . , the Court held that a juvenile

convicted of a homicide offense could not be sentenced to life in prison without parole

absent consideration of the juvenile’s special circumstances in light of the principles

and purposes of juvenile sentencing.” Montgomery v. Louisiana, ___ U.S. ___, ___,

193 L. Ed. 2d 599, 610 (2016). In Miller, the Court reasoned that “Roper and Graham

[v. Florida, 560 U.S. 48, 176 L.Ed.2d 825 (2010),] establish that children are

constitutionally different from adults for purposes of sentencing. Because juveniles

have diminished culpability and greater prospects for reform, we explained, ‘they are

less deserving of the most severe punishments.’ ” Miller, 567 U.S. at 471, 183 L. Ed.

2d at 418 (quoting Graham, 560 U.S. at ___, 176 L. Ed. 2d 825). “Miller requires that

before sentencing a juvenile to life without parole, the sentencing judge take into

account how children are different, and how those differences counsel against

irrevocably sentencing them to a lifetime in prison.” Montgomery, ___ U.S. at ___,

193 L. Ed. 2d at 619 (citation omitted).

 In response to the Miller decision, our General
 Assembly enacted N.C. Gen. Stat. § 15A–1476 et seq. (“the

 -5-
 STATE V. MAY

 Opinion of the Court

 Act”), entitled “An act to amend the state sentencing laws
 to comply with the United States Supreme Court Decision
 in Miller v. Alabama.” N.C. Sess. Law 2012–148. The Act
 applies to defendants convicted of first-degree murder who
 were under the age of eighteen at the time of the offense.
 N.C. Gen. Stat. § 15A–1340.19A.

State v. Lovette, 225 N.C. App. 456, 470, 737 S.E.2d 432, 441 (2013) (footnote omitted).

Pursuant to General Statutes, section 15A-1340.19B (entitled “Penalty

determination”), when a defendant is sentenced to life in prison for first-degree

murder under some theory other than the felony murder rule, which compels a

sentence of life in prison with parole, “the court shall conduct a hearing to determine

whether the defendant should be sentenced to life imprisonment without parole, as

set forth in G.S. 14-17, or a lesser sentence of life imprisonment with parole.” N.C.

Gen. Stat. § 15A-1340.19B(a)(2) (2015). In making its determination,

 [t]he court shall consider any mitigating factors in
 determining whether, based upon all the circumstances of
 the offense and the particular circumstances of the
 defendant, the defendant should be sentenced to life
 imprisonment with parole instead of life imprisonment
 without parole. The order adjudging the sentence shall
 include findings on the absence or presence of any
 mitigating factors and such other findings as the court
 deems appropriate to include in the order.

Id. § 15A-1340.19C(a).1 “This Court has held that ‘use of the language “shall” ’ is a

mandate to trial judges, and that failure to comply with the statutory mandate is

 1 Section 15A-1340.19B includes the following as mitigating factors that may be submitted to
the trial court:

 -6-
 STATE V. MAY

 Opinion of the Court

reversible error.” State v. Antone, 240 N.C. App. 408, 410, 770 S.E.2d 128, 130 (2015)

(quoting In re Eades, 143 N.C. App. 712, 713, 547 S.E.2d 146, 147 (2001)).

 Here, on 11 August 2015—more than fourteen days after entry of judgment

and defendant’s notice of appeal—the trial court entered an order making findings of

fact pursuant to section 15A-1340.19B. However, “[t]he jurisdiction of the trial court

with regard to the case is divested . . . when notice of appeal has been given and [the

period for giving notice of appeal (fourteen days from entry of judgment in a criminal

appeal)] has expired.” N.C. Gen. Stat. § 15A-1448(a)(3) (2015); see also N.C. R. App.

P. 4(a)(2) (“Any party entitled by law to appeal from a judgment or order of a superior

or district court rendered in a criminal action may take appeal by (1) giving oral notice

of appeal at trial, or (2) filing notice of appeal with the clerk of superior court . . .

within fourteen days after entry of the judgment . . . .”). At that point, “the court is

only authorized to make the record correspond to the actual facts and cannot, under

the guise of an amendment of its records, correct a judicial error or incorporate

anything in the minutes except a recital of what actually occurred.” State v. Davis,

 (1) Age at the time of the offense[;] (2) Immaturity[;] (3) Ability to
 appreciate the risks and consequences of the conduct[;] (4) Intellectual
 capacity[;] (5) Prior record[;] (6) Mental health[;] (7) Familial or peer
 pressure exerted upon the defendant[;] (8) Likelihood that the
 defendant would benefit from rehabilitation in confinement[; and] (9)
 Any other mitigating factor or circumstance.

N.C. Gen. Stat. § 15A-1340.19B(c) (2015).

 -7-
 STATE V. MAY

 Opinion of the Court

123 N.C. App. 240, 243, 472 S.E.2d 392, 394 (1996) (quoting State v. Cannon, 244

N.C. 399, 404, 94 S.E.2d 339, 342 (1956)).

 The trial court, in the instant case, erred by entering judgment sentencing

defendant to life imprisonment without parole without making the statutorily

required findings of fact. Further, because defendant gave immediate notice of appeal

from the judgment, we hold the trial court was without authority to enter the 11

August 2015 order in a belated attempt at compliance with N.C. Gen. Stat. § 15A-

1340.19B.2 Thus, the trial court failed to comply with the statutory mandate of N.C.

Gen. Stat. § 15A-1340.19B, amounting to reversible error. See Antone, 240 N.C. App.

at 412, 770 S.E.2d 130–31 (vacating the order and judgment of the trial court and

remanding for a new sentencing hearing where the trial court failed to set out

findings in consideration of four mitigating factors enumerated in section 15A-

1340.19B(c)). Accordingly, we vacate the 16 July 2015 judgment sentencing

defendant to a term of life imprisonment without the possibility of parole, and we

remand the matter for a new sentencing hearing consistent with the statutory

obligations in N.C. Gen. Stat. §§ 15A-1340.19B, -1340.19C. We also vacate the trial

court’s 11 August 2015 order as the court was without jurisdiction to enter the order

at that time. See Davis, 123 N.C. App. at 243, 472 S.E.2d at 394.

 2 We also note that the State concedes error by the trial court as the court lacked jurisdiction
to make findings of fact after defendant had given notice of appeal.

 -8-
 STATE V. MAY

 Opinion of the Court

 The judgment of the trial court entered 16 July 2015 imposing a sentence of

life imprisonment without parole is VACATED AND REMANDED, and the trial

court order of 11 August 2015 is VACATED.

 Judge DAVIS concurs.

 Judge STROUD concurs with separate opinion.

 -2-
No. COA16-1121 – State v. May

STROUD, Judge, concurring.

 I concur with the majority opinion but write separately to note concern about

how our courts are addressing their discretionary determination of whether juveniles

should be sentenced to life imprisonment without possibility of parole.

 On its face, North Carolina General Statute § 15A-1340.19B seems quite clear:

 (c) The defendant or the defendant’s counsel may
 submit mitigating circumstances to the court, including,
 but not limited to, the following factors:
 (1) Age at the time of the offense.
 (2) Immaturity.
 (3) Ability to appreciate the risks and
 consequences of the conduct.
 (4) Intellectual capacity.
 (5) Prior record.
 (6) Mental health.
 (7) Familial or peer pressure exerted upon
 the defendant.
 (8) Likelihood that the defendant would
 benefit from rehabilitation in
 confinement.
 (9) Any other mitigating factor or
 circumstance.

N.C. Gen. Stat. § 15A-1340.19B (2015). But applying these factors has been difficult.

Although the trial judge is required to find mitigating factors or the absence of

mitigating factors to justify her decisions, and North Carolina General Statute § 15A-

1340.19B(c) lists the factors which may be shown as mitigating factors, I am not sure

that anyone understands what particular facts found within the factors should be

considered as mitigating factors. For example, a trial court may find that a juvenile

has done well in school; some may view this is a mitigating factor because it shows
 STATE V. MAY

 STROUD, J., concurring

the juvenile’s prior commitment to bettering himself and potential for improvement

while others may view it as not mitigating as it demonstrates the juvenile has a high

“[i]ntellectual capability” and thus a better “[a]bility to appreciate the risks and

consequences of the conduct” than others his age might. Id. Likewise, should a trial

court consider a juvenile’s chaotic and violent upbringing as lacking any mitigating

force, suggesting that he would not benefit from rehabilitation? Or should the trial

court consider this as mitigating, since this sort of background may suggest that his

behavior may have resulted from “familial or peer pressure exerted upon” him? Id.

 The United States Supreme Court discussed exactly this sort of problem in

Miller, as we noted in Lovette:

 In Miller, in contrasting the cases of the two 14–year–old
 juveniles under consideration with juveniles in prior cases,
 the Supreme Court contrasted some of these
 characteristics of juveniles:
 In light of Graham’s reasoning, these
 decisions too show the flaws of imposing
 mandatory life-without-parole sentences on
 juvenile homicide offenders. Such mandatory
 penalties, by their nature, preclude a
 sentencer from taking account of an offender’s
 age and the wealth of characteristics and
 circumstances attendant to it. Under these
 schemes, every juvenile will receive the same
 sentence as every other—the 17–year–old and
 the 14–year–old, the shooter and the
 accomplice, the child from a stable household
 and the child from a chaotic and abusive one.
 And still worse, each juvenile (including these
 two 14–year–olds) will receive the same
 sentence as the vast majority of adults

 2
 STATE V. MAY

 STROUD, J., concurring

committing similar homicide offenses—but
really, as Graham noted, a greater sentence
than those adults will serve. In meting out
the death penalty, the elision of all these
differences would be strictly forbidden. And
once again, Graham indicates that a similar
rule should apply when a juvenile confronts a
sentence of life (and death) in prison.
 Both cases before us illustrate the
problem. Take Jackson’s in Graham first. As
noted earlier, Jackson did not fire the bullet
that killed Laurie Troup; nor did the State
argue that he intended her death. Jackson’s
conviction was instead based on an aiding-
and-abetting theory; and the appellate court
affirmed the verdict only because the jury
could have believed that when Jackson
entered the store, he warned Troup that we
ain’t playin, rather than told his friends that
I thought you all was playin. To be sure,
Jackson learned on the way to the video store
that his friend Shields was carrying a gun,
but his age could well have affected his
calculation of the risk that posed, as well as
his willingness to walk away at that point. All
these circumstances go to Jackson’s
culpability for the offense. And so too does
Jackson’s family background and immersion
in violence: Both his mother and his
grandmother had previously shot other
individuals. At the least, a sentencer should
look at such facts before depriving a 14–year–
old of any prospect of release from prison.
 That is true also in Miller’s case. No
one can doubt that he and Smith committed a
vicious murder. But they did it when high on
drugs and alcohol consumed with the adult
victim. And if ever a pathological background
might have contributed to a 14–year–old’s
commission of a crime, it is here. Miller’s

 3
 STATE V. MAY

 STROUD, J., concurring

 stepfather physically abused him; his
 alcoholic and drug-addicted mother neglected
 him; he had been in and out of foster care as
 a result; and he had tried to kill himself four
 times, the first when he should have been in
 kindergarten. Nonetheless, Miller’s past
 criminal history was limited--two instances of
 truancy and one of second-degree criminal
 mischief. That Miller deserved severe
 punishment for killing Cole Cannon is beyond
 question. But once again, a sentencer needed
 to examine all these circumstances before
 concluding that life without any possibility of
 parole was the appropriate penalty.
 Miller, 567 U.S. at ___, 183 L.Ed.2d at 422–24
 (citations, quotation marks, brackets, and footnote
 omitted). In this comparison, the Supreme Court
 demonstrates how a court might weigh the
 “hallmark features” in sentencing juveniles. Id. at
 ___, 183 L.Ed.2d at 422–24.

State v. Lovette, 233 N.C. App. 706, 720–21, 758 S.E.2d 399, 409–10 (2014) (ellipses

omitted).

 Many cases from this Court citing North Carolina General Statute § 15A-

1340.19B illustrate the problem: For example, in State v. James, the trial court made

extensive findings of fact regarding the juvenile, but this Court remanded for

additional findings since the order did not clearly identify which factors were

considered as mitigating and which it considered as “not mitigating”:

 For example, and as pointed out by defendant, the
 trial court found in finding number twenty-three,
 defendant was once a member of the Bloods gang and wore
 a self-made tattoo of a B on his arm. Yet that finding
 further provided, as of October, 2005 defendant was no

 4
 STATE V. MAY

 STROUD, J., concurring

longer affiliated with the gang. He had been referred to the
Charlotte Mecklenburg Police Department Gang of One
program that worked with former gang members. This
finding could be interpreted different ways—defendant
was capable of rehabilitation or rehabilitative efforts had
failed. Similarly, the trial court found in finding of fact
number nine that at the time of the crime defendant was
16 years, 9 months old. While the finding makes clear that
defendant was a juvenile, it is unclear whether defendant’s
age is mitigating or not. In finding of fact number twenty-
six, the trial court found that individuals around the age of
16 can typically engage in cognitive behavior which
requires thinking through things and reasoning, but not
necessarily self-control. In that same finding, however, the
trial court also found, things that may affect an individual’s
psycho-social development may be environment, basic
needs, adult supervision, stressful and toxic environment,
peer pressure, group behavior, violence, neglect, and
physical and/or sexual abuse. The trial court’s other
findings show that defendant has experienced many of
those things found by the trial court to affect development.
 Instead of identifying which findings it considered
mitigating and which were not, after making its findings,
the trial court summarized its considerations in finding of
fact thirty-four as follows:
 The Court, has considered the age of the
 Defendant at the time of the murder, his level
 of maturity or immaturity, his ability to
 appreciate the risks and consequences of his
 conduct, his intellectual capacity, his one
 prior record of juvenile misconduct (which
 this Court discounts and does not consider to
 be pivotal against the Defendant, but only
 helpful as to the light the juvenile
 investigation sheds upon Defendant’s
 unstable home environment), his mental
 health, any family or peer pressure exerted
 upon defendant, the likelihood that he would
 benefit from rehabilitation in confinement,
 the evidence offered by Defendant’s witnesses

 5
 STATE V. MAY

 STROUD, J., concurring

 as to brain development in juveniles and
 adolescents, and all of the probative evidence
 offered by both parties as well as the record in
 this case. The Court has considered
 Defendant’s statements to the police and his
 contention that it was his co-defendant who
 planned and directed the commission of the
 crimes against the victim, the Court does note
 that in some of the details and contentions the
 statement is self-serving and contradicted by
 physical evidence in the case. In the exercise
 of its informed discretion, the Court
 determines that based upon all the
 circumstances of the offense and the
 particular circumstances of the Defendant
 that the mitigating factors found above, taken
 either individually or collectively, are
 insufficient to warrant imposition of a
 sentence of less than life without parole.
 This finding in no way demonstrates the absence or
 presence of any mitigating factors. It simply lists the trial
 court’s considerations and final determination.

___ N.C. App. ___, 786 S.E.2d 73, 83-84 (2016) (citations, quotation marks, ellipses,

and brackets omitted), appeal dismissed and disc. review allowed, ___ N.C. ___, 796

S.E.2d 789, disc. review allowed, ___ N.C. ___, 797 S.E.2d 6 (2017).

 This Court remanded a similar order to that in James in State v. Antone, ___

N.C. App. ___, 770 S.E.2d 128 (2015). Compare James, ___ N.C. App. ___, 786 S.E.2d

at 83-84. After making brief findings of fact, including some recitations of testimony,

regarding the juvenile’s life, characteristics, and circumstances of the crime, the trial

court determined there were “insufficient mitigating factors to find life with parole,”

and then this Court determined

 6
 STATE V. MAY

 STROUD, J., concurring

 that the trial court’s findings of fact and order fail to comply
 with the mandate set forth in N.C. Gen. Stat. § 15A–
 1340.19C that requires the court to include findings on the
 absence or presence of any mitigating factors. The trial
 court’s order makes cursory, but adequate findings as to
 the mitigating circumstances set forth in N.C. Gen. Stat. §
 15A–1340.19B(c)(1), (4), (5), and (6). The order does not
 address factors (2), (3), (7), or (8). In the determination of
 whether the sentence of life imprisonment should be with
 or without parole, factor (8), the likelihood of whether a
 defendant would benefit from rehabilitation in
 confinement, is a significant factor.

240 N.C. App. 408, 412, 770 S.E.2d 128, 130 (2015).

 I would note that the order on appeal in this case, although entered without

jurisdiction and requiring remand for that reason, bears a striking resemblance to

the orders in James and Antone in that it makes findings of fact regarding the

defendant’s life and upbringing but does not identify any particular factor as a

mitigating or not mitigating factor. Compare James, ___ N.C. App. at ___, 786 S.E.2d

at 83-84; Antone, 240 N.C. App. at 412, 770 S.E.2d at 130. The order also finds that

“the killing . . . involved the shooting of the victim numerous times including one shot

in the victim’s back[,]” and it appears the trial court considered this as not mitigating,

because it is the only finding listed after the trial court noted “[t]here are no further

mitigating factors or circumstances.” But the circumstances of the crime are not

listed as one of the potential mitigating factors and “aggravating” factors are not part

of the analysis under North Carolina General Statute § 15A-1340.19B. See N.C. Gen.

Stat. § 15A-1340.19B.

 7
 STATE V. MAY

 STROUD, J., concurring

 Indeed, North Carolina General Statute § 15A-1340.19B identifies only

potential mitigating factors, so factors can either be mitigating or not mitigating

factors. See id. There is no consideration of what we may in other contexts consider

as “aggravating factors,” so a factor which the trial court considers to support life

imprisonment without the possibility of parole is referred to as a factor which is “not

mitigating” instead of an aggravating factor. See generally id. This is an important

distinction, although the negative phraseology which may be required to describe a

factor that is “not mitigating” – but is also not “aggravating” – can be quite awkward.

“Aggravating factors” apply in other situations of sentencing adults and typically

must be determined by a jury based upon Blakely v. Washington, 542 U.S. 296, 159

L. Ed. 2d 403 (2004). See also N.C. Gen. Stat. § 15A-1340.16; State v. McQueen, 181

N.C. App. 417, 422, 639 S.E.2d 131, 134 (2007) (“In response to the ruling in Blakely,

the North Carolina General Assembly enacted a procedure for aggravating factors to

be proven to a jury under N.C.G.S. § 15A–1340.16.”) North Carolina General Statute

§ 15A-1340.19B is only dealing with the terrible and thankfully rare situation where

a juvenile has committed such an atrocious crime he faces the possibility of life

imprisonment without parole. See generally N.C. Gen. Stat. § 15A-1340.19B. North

Carolina General Statute § 15A-1340.19B does not seem to envision much if any

weight for the horrific nature of the crime, as would be appropriate in adult

sentencing where both mitigating and aggravating factors are weighed. Contrast

 8
 STATE V. MAY

 STROUD, J., concurring

N.C. Gen. Stat. §§ 15A-1340.16; -1340.19B. Here, only mitigating factors or the lack

thereof should be considered in the sentencing analysis. See N.C. Gen. Stat. § 15A-

1340.19B.

 Again, I would caution that almost all of the cases subject to North Carolina

General Statute § 15A-1340.19B arose from heinous and shocking crimes; by

definition, all are first degree murders, based on factors other than felony murder,

see id., committed by minors. See N.C. Gen. Stat. § 15A-1340.19A (2015). If the facts

of the particular crime are treated as a factor which bears much weight in the

analysis, then life imprisonment without the possibility of parole will be the rule and

not the exception. But under Miller, life imprisonment without parole for juveniles

should be the exception, not the rule:

 But given all we have said in Roper, Graham, and this
 decision about children’s diminished culpability and
 heightened capacity for change, we think appropriate
 occasions for sentencing juveniles to this harshest possible
 penalty will be uncommon. That is especially so because of
 the great difficulty we noted in Roper and Graham of
 distinguishing at this early age between the juvenile
 offender whose crime reflects unfortunate yet transient
 immaturity, and the rare juvenile offender whose crime
 reflects irreparable corruption. Although we do not
 foreclose a sentencer’s ability to make that judgment in
 homicide cases, we require it to take into account how
 children are different, and how those differences counsel
 against irrevocably sentencing them to a lifetime in prison.

Miller v. Alabama, 132 S. Ct. 2455, 2469, 183 L. Ed. 2d 407, 424 (2012) (citations,

quotation marks, and footnote omitted).

 9
 STATE V. MAY

 STROUD, J., concurring

 Furthermore, the Supreme Court has noted that a juvenile’s past

disadvantages should be an important factor in determining his culpability, noting

that in a prior case:

 a 16–year–old shot a police officer point-blank and killed
 him. We invalidated his death sentence because the judge
 did not consider evidence of his neglectful and violent
 family background (including his mother’s drug abuse and
 his father’s physical abuse) and his emotional disturbance.
 We found that evidence particularly relevant—more so
 than it would have been in the case of an adult offender.
 We held: Just as the chronological age of a minor is itself a
 relevant mitigating factor of great weight, so must the
 background and mental and emotional development of a
 youthful defendant be duly considered in assessing his
 culpability.

Id. at 2467, 183 L. Ed. 2d at 422 (citation, quotation marks, and brackets omitted).

Of course, imposition of a sentence of life imprisonment with the possibility of parole

is still not a guarantee that a defendant will ever be released, and no one can predict

how a juvenile may change, for better or worse, over the passing decades of his life.3

As the United States Supreme Court noted, it is a “rare juvenile offender whose crime

reflects irreparable corruption.” Id. at 2469, 183 S.E.2d at 424.

 Both trial courts and appellate courts normally consider only the case before

the court and not how that case may compare to other similar cases. And I do not

 3 North Carolina General Statute § 15A-1340.19A provides that a sentence of “life
imprisonment with parole” requires that “the defendant shall serve a minimum of 25 years
imprisonment prior to becoming eligible for parole.” N.C. Gen. Stat. § 15A-1340.19A (quotation marks
omitted).

 10
 STATE V. MAY

 STROUD, J., concurring

know the statistics regarding the percentages of juveniles who have been eligible to

be sentenced to life imprisonment without the possibility of parole who have actually

received this sentence instead of the possibility of parole. I do not know the statistics

regarding the percentages of juveniles who have been eligible to be sentenced to life

imprisonment without the possibility of parole who have actually received this

sentence instead of the possibility of parole, but according to Miller, that percentage

should be very small. Id. Convictions of juveniles for first degree murder are rare,

and within that pool of eligible juveniles who have committed these crimes, sentences

of imprisonment for life without the possibility of parole should be “uncommon” as

well, if our courts are to comply with the law as set forth by the United States

Supreme Court. Id.

 11