2013 Ark. 175

**Kuntrell JACKSON, Appellant**

v.

**Larry NORRIS, Director, Arkansas Department of Correction, Appellee.**

No. 09–145.

Supreme Court of Arkansas.

April 25, 2013.

J. Blake Hendrix; and Bryan A. Stevenson and Alicia A. D'Addario, Equal Justice Initiative of Alabama, for appellant.

Dustin McDaniel, Att'y Gen., by: Vada Berger, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Justice.

This court affirmed Kuntrell Jackson's capital-murder and aggravated-robbery convictions and his sentence of life imprisonment without parole. *Jackson v. State,* 359 Ark. 87, 194 S.W.3d 757 (2004). This court subsequently affirmed the Jefferson County Circuit Court's denial of Jackson's petition for writ of habeas corpus, concluding that even though he was only fourteen years old at the time he committed the crimes, Jackson's mandatory sentence of life imprisonment without parole did not violate the Eighth and Fourteenth Amendments to the United States Constitution. *Jackson v. Norris,* 2011 Ark. 49, 378 S.W.3d 103, *cert. granted,* —— U.S. ——, 132 S.Ct. 548, 181 L.Ed.2d 395 (2011), *rev'd and remanded sub nom. Miller v. Alabama,* —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). After granting certiorari, the United States Supreme Court held that Arkansas's sentencing scheme violated the Eighth Amendment's prohibition on "cruel and unusual punishments" because it imposed upon Jackson a mandatory sentence of life without parole despite his having been under the age of eighteen at the time he committed the crime of capital murder. *Miller v. Alabama,* —— U.S. ——, ——, 132 S.Ct. 2455, 2460, 183 L.Ed.2d 407 (2012).

On remand from the United States Supreme Court, we reverse the denial of the petition for writ of habeas corpus and issue the writ. We further remand the case to the Jefferson County Circuit Court with instructions that the case be transferred to the Mississippi County Circuit Court. We also instruct that a sentencing hearing be held in the Mississippi County Circuit Court where Jackson may present for consideration evidence that would include that of his "age, age-related characteristics, and the nature of" his crime. *Id.* at ——, 132 S.Ct. at 2475. Further, we instruct that his sentence must fall within the statutory discretionary sentencing range for a Class Y felony.

Jackson was convicted of capital murder. Arkansas Code Annotated section 5–10–101 (Repl.1997) provides in full as follows:

(a) A person commits capital murder if:

(1) Acting alone or with one (1) or more other persons, he commits or attempts to commit rape, kidnapping, vehicular piracy, robbery, burglary, a felony violation of the Uniform Controlled Substances Act, §§ 5–64–101–5–64–608, involving an actual delivery of a controlled substance, or escape in the first degree, and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; or

(2) Acting alone or with one (1) or more other persons, he commits or attempts to commit arson, and in the course of and in furtherance of the felony or in immediate flight therefrom, he or an accomplice causes the death of any person; or

(3) With the premeditated and deliberated purpose of causing the death of any law enforcement officer, jailer, prison official, fire fighter, judge or other court official, probation officer, parole officer, any military personnel, or teacher or school employee, when such person is acting in the line of duty, he causes the death of any person; or

(4) With the premeditated and deliberated purpose of causing the death of another person, he causes the death of any person; or

(5) With the premeditated and deliberated purpose of causing the death of the

holder of any public office filled by election or appointment or a candidate for public office, he causes the death of any person; or

(6) While incarcerated in the Department of Correction or the Department of Community Punishment, he purposely causes the death of another person after premeditation and deliberation; or

(7) Pursuant to an agreement that he cause the death of another person in return for anything of value, he causes the death of any person; or

(8) He enters into an agreement whereby one person is to cause the death of another person in return for anything of value, and the person hired, pursuant to the agreement, causes the death of any person; or

(9) Under circumstances manifesting extreme indifference to the value of human life, he knowingly causes the death of a person fourteen (14) years of age or younger at the time the murder was committed, provided that the defendant was eighteen (18) years of age or older at the time the murder was committed. It shall be an affirmative defense to any prosecution under this subdivision (a)(9) arising from the failure of the parent, guardian, or person standing in loco parentis to provide specified medical or surgical treatment, that the parent, guardian, or person standing in loco parentis relied solely on spiritual treatment through prayer in accordance with the tenets and practices of an established church or religious denomination of which he is a member; or

(10) He purposely discharges a firearm from a vehicle at a person, or at a vehicle, conveyance, or a residential or commercial occupiable structure he knows or has good reason to believe to be occupied by a person, and thereby causes the death of another person under circumstances manifesting extreme indifference to the value of human life.

(b) It is an affirmative defense to any prosecution under subdivision (a)(1) of this section for an offense in which the defendant was not the only participant that the defendant did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid in its commission.

(c) Capital murder is punishable by death or life imprisonment without parole pursuant to §§ 5–4–601–5–4–605, 5–4–607, and 5–4–608. For all purposes other than disposition under §§ 5–4–101–5–4–104, 5–4–201–5–4–204, 5–4–301–5–4–308, 5–4–310, 5–4–311, 5–4–401–5–4–404, 5–4–501–5–4–504, 5–4–505 [repealed], 5–4–601–5–4–605, 5–4–607, and 5–4–608, capital murder is a Class Y felony.

Thus, the statute provides for a mandatory sentence for persons convicted of capital murder of either death or life without parole. *See also* Ark.Code Ann. § 5–4–104(b) (Repl.1997) (providing that "[a] defendant convicted of capital murder ... shall be sentenced to death or life imprisonment without parole"); Ark.Code Ann. § 5–4–615 (Repl.1997) (providing that "[a] person convicted of a capital offense shall be punished by death by lethal injection or by life imprisonment without parole"). In this instance, Jackson was ineligible for the death penalty. *Miller*, —— U.S. at ——, 132 S.Ct. at 2461 n. 1 (citing *Thompson v. Oklahoma*, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988) (plurality opinion)). There are no provisions in the capital-murder statute providing a lesser sentence for persons under the age of eighteen.

In *Miller*, the United States Supreme Court stated that "[b]y removing youth from the balance," Arkansas's mandatory sentencing scheme for capital murder

"prohibit[s] a sentencing authority from assessing whether the law's harshest term of imprisonment proportionally punishes a juvenile offender." *Id.* at ——, 132 S.Ct. at 2466. The Court explained that "[s]uch mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id.* at ——, 132 S.Ct. at 2467.

In recapping its analysis, the Court wrote as follows:

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

*Id.* at ——, 132 S.Ct. at 2468 (citations omitted). In Jackson's particular case, the Court observed that Jackson's conviction was based on an "aiding-and-abetting theory" and that "his age could well have affected his calculation of the risk" posed by his friend's possession of a weapon. *Id.* at ——, 132 S.Ct. at 2468. The Court also noted "Jackson's family background and immersion in violence." *Id.* at ——, 132 S.Ct. at 2468. The Court concluded that the "Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," because by "making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Id.* at ——, 132 S.Ct. at 2469.

The Court observed that given "children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penally will be uncommon." *Id.* at ——, 132 S.Ct. at 2469. Nevertheless, the Court did "not foreclose a sentencer's ability to make that judgment in homicide cases," but it did "require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at ——, 132 S.Ct. at 2469.

The Court held that "[b]y requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment." *Id.* at ——, 132 S.Ct. at 2475. The Court reversed and remanded the case "for further proceedings not inconsistent with this opinion." *Id.* at ——, 132 S.Ct. at 2475.

We agree with the State's [1] concession that Jackson is entitled to the benefit of

---

1. While Larry Norris, Director, Arkansas Department of Correction, is the nominal party,

the United State's Supreme Court's opinion in his own case. *See Yates v. Aiken,* 484 U.S. 211, 218, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988). Given the holding in *Miller,* we reverse the denial of the petition for writ of habeas corpus, issue the writ, and remand to the Jefferson County Circuit Court with instructions that the case be transferred to the Mississippi County Circuit Court. *See Waddle v. Sargent,* 313 Ark. 539, 545, 855 S.W.2d 919, 922 (1993) (issuing the writ in a Lincoln County habeas corpus case and placing the prisoner in the custody of Faulkner County law enforcement to be held on a capital-murder charge); *see also* Ark.Code Ann. § 16–112–102(a)(1) (Repl.2006) (granting power to this court to issue writ); Ark. Code Ann. § 16–112–115 (Repl.2006) (permitting the "judge before whom writ is returned" to "make such order as may be proper").

We must, however, address the proper sentencing procedure for the Mississippi County Circuit Court to follow on resentencing. While the State suggests that Jackson, through severance of language from various statutes, may be sentenced by this court to a mandatory sentence of life imprisonment with the possibility of parole, the imposition of that sentence by this court would not allow for consideration of *Miller* evidence. Furthermore, given the constitutional infirmities of our capital-murder statute as it pertains to juveniles, we must also determine whether the portions of the statute giving rise to the infirmities can be severed without defeating the entirety of the statute. *Hobbs v. Jones,* 2012 Ark. 293, at 16–17, 412 S.W.3d 844, 855–56. Determining whether the infirmities are fatal to the entire legislation requires that we look to whether a single purpose is meant to be accomplished by the act and whether the sections of the

act are interrelated and dependent upon each other. *Id.,* 412 S.W.3d at 855–56.

In considering the capital-murder statute quoted above as it pertains to juveniles, we observe that substantial portions of subsection (c) must be severed. In sum, we must delete the entirety of the first sentence, which provides that "[c]apital murder is punishable by death or life imprisonment without parole pursuant to §§ 5–4–601–5–4–605, 5–4–607, and 5–4–608." Furthermore, we must sever most of the second sentence, which provides that "[f]or all purposes other than disposition under §§ 5–4–101–5–4–104, 5–4–201–5–4–204, 5–4–301–5–4–308, 5–4–310, 5–4–311, 5–4–401–5–4–404, 5–4–501–5–4–504, 5–4–505 [repealed], 5–4–601–5–4–605, 5–4–607, and 5–4–608, capital murder is a Class Y felony." Nevertheless, we may sever that sentence so that, for juveniles convicted of capital murder, all that remains is that "capital murder is a Class Y felony."

This severance will not defeat the statute. The purpose of subsection (c) was to provide a penalty for capital murder. Severing language from subsection (c) so that capital murder is a Class Y felony still serves that purpose by providing a penalty for the crime. Moreover, the remaining subsections of the capital-murder statute are not dependent upon the severed language, as subsection (a) of the statute addresses the elements of the crime, and subsection (b) addresses an affirmative defense. Accordingly, we hold that severing that language from the capital-murder statute cures the constitutional infirmities when the statute is applied to juveniles, and the severance of that language is not fatal as the statute's purpose is still accomplished, and the remaining subsections of the statute are not interrelated and dependent. Similarly, we may sever the other

we will identify the appellee as the "State."

statutes quoted above that indicate that the penalty for capital murder is death or life imprisonment, without the severance proving fatal to the capital-murder statute. See Ark.Code Ann. § 5–4–104(b); Ark. Code Ann. § 5–4–615.

Moreover, this severance is in keeping with the intent of the statutory rules of construction of the Arkansas Code, as the Code specifically permits severance of provisions that are invalid or unconstitutional. See Ark.Code Ann. § 1–2–117 (Repl.2008) (providing that if a portion of the Code is "declared or adjudged to be invalid or unconstitutional," then "such declaration or adjudication shall not affect the remaining portions of this Code which shall remain in full force and effect as if the portion so declared or adjudged invalid or unconstitutional was not originally a part of this Code"); Ark.Code Ann. § 1–2–205 (Repl.2008)₉ (providing that the "provisions of each and every act . . . are declared to be severable" and that "the invalidity of any provision of that act shall not affect other provisions of the act which can be given effect without the invalid provision").

We thus instruct the Mississippi County Circuit Court to hold a sentencing hearing where Jackson may present *Miller* evidence for consideration. We further instruct that Jackson's sentence must fall within the statutory discretionary sentencing range for a Class Y felony. For a Class Y felony, the sentence is not a mandatory sentence of life imprisonment without parole, but instead a discretionary sentencing range of not less than ten years and not more than forty years, or life. Ark.Code Ann. § 5–4–401(a)(1) (Repl. 1997).

Finally, we are mindful that Jackson argues that as a matter of Eighth Amendment law, and because of the unique circumstances of this case, he cannot be sentenced to life imprisonment. However, it is premature to consider whether a life sentence would be permissible given that a life sentence is only one of the options available on resentencing.

Denial of petition for writ of habeas corpus reversed; writ of habeas corpus issued; remanded to the Jefferson County Circuit Court with instructions.