McCULLOUGH, Judge.
 

 *352
 
 Harry Sharod James ("defendant") appeals from judgment entered upon his resentencing for first-degree murder as ordered by our Supreme Court. For the following reasons, we affirm the constitutionality of N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 

 ,
 
 but reverse and remand this case for further resentencing proceedings.
 

 I.
 
 Background
 

 On 19 June 2006, a Mecklenburg County Grand Jury indicted defendant on one count of murder and one count of robbery with a dangerous weapon. The indictments were the result of events that occurred on 12 May 2006 when defendant was sixteen years old.
 

 At the conclusion of defendant's trial on 10 June 2010, a jury returned verdicts finding defendant guilty of first-degree murder both on the basis of malice, premeditation, and deliberation and under the first-degree felony murder rule and finding defendant guilty of robbery with a dangerous weapon. The trial court then entered separate judgments sentencing defendant to a term of life imprisonment without the possibility of parole for first-degree murder and sentencing defendant to a concurrent term of 64 to 86 months imprisonment for robbery with a dangerous weapon. Defendant's sentence of life without parole for first-degree murder was mandated by the version of N.C. Gen.Stat. § 14-17 in effect at that time.
 
 See
 
 N.C. Gen.Stat. § 14-17 (2010).
 

 Defendant appealed to this Court and, among other issues, argued a sentence of life without the possibility of parole for a juvenile was cruel and unusual punishment in violation of the juvenile's rights under the Eight Amendment to the United States Constitution and Article I, Section 27 of the North Carolina Constitution. In asserting his argument, defendant identified two cases in which petitions for writ of certiorari were pending before the United States Supreme Court seeking review of the constitutionality of sentences of life without parole for juveniles.
 

 On 18 October 2011, this Court filed an unpublished opinion in defendant's case holding the constitutional issue was not preserved for appeal and finding no error below.
 
 State v. James,
 
 --- N.C.App. ----,
 
 716 S.E.2d 876
 
 , available at
 
 2011 WL 4917045
 
 (18 October 2011) (unpub.). In so holding, we explained that defendant failed to preserve the issue by objecting at trial and, although significant changes in the applicable law may warrant review in some instances where an issue is not otherwise preserved, there had been no change in the law as it relates to sentencing
 
 *353
 
 juveniles to life without parole because the petitions for writ of certiorari in the cases referenced by defendant were still pending before the United States Supreme Court and there was no guarantee the Court would grant certiorari in either case, much less hold that sentences of life without parole for juveniles are unconstitutional.
 
 Id.
 
 at *5. From this Court's unanimous decision, defendant petitioned our Supreme Court for discretionary review.
 

 Before our Supreme Court acted regarding defendant's petition in this case, the United States Supreme Court granted certiorari in the two cases referenced in defendant's argument to this Court, heard arguments in those cases in tandem on 20 March 2012, and issued its decision in
 
 Miller v. Alabama,
 
 567 U.S. ----,
 
 132 S.Ct. 2455
 
 ,
 
 183 L.Ed.2d 407
 
 (2012), on 25 June 2012. In
 
 Miller,
 
 the Court meticulously reviewed its decisions in
 
 Roper v. Simmons,
 

 543 U.S. 551
 
 ,
 
 125 S.Ct. 1183
 
 ,
 
 161 L.Ed.2d 1
 
 (2005) (holding imposition of the death penalty on juvenile offenders is prohibited by the Eighth Amendment), and
 
 Graham v. Florida,
 

 560 U.S. 48
 
 ,
 
 130 S.Ct. 2011
 
 ,
 
 176 L.Ed.2d 825
 
 (2010) (holding the imposition of a sentence
 
 *76
 
 of life without parole on a juvenile offender who did not commit homicide is prohibited by the Eighth Amendment), and then held "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."
 
 Miller,
 
 567 U.S. at ----,
 
 132 S.Ct. at 2469
 
 ,
 
 183 L.Ed.2d at 424
 
 . The Court summarized the rationale for its holding as follows:
 

 Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features-among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him-and from which he cannot usually extricate himself-no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth-for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.
 

 *354
 

 Id.
 

 at ----,
 
 132 S.Ct. at 2468
 
 ,
 
 183 L.Ed.2d at 423
 
 (internal citations omitted). More concisely, "[s]uch mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it."
 

 Id.
 

 at ----,
 
 132 S.Ct. at 2467
 
 ,
 
 183 L.Ed.2d at 422
 
 . "By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment."
 

 Id.
 

 at ----,
 
 132 S.Ct. at 2469
 
 ,
 
 183 L.Ed.2d at 424
 
 . Thus, "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles."
 

 Id.
 

 at ----,
 
 132 S.Ct. at 2475
 
 ,
 
 183 L.Ed.2d at 430
 
 .
 

 In response to
 
 Miller,
 
 our General Assembly approved "an act to amend the state sentencing laws to comply with the United States Supreme Court decision in
 
 Miller v. Alabama
 
 " (the "Act") on 12 July 2012.
 
 See
 

 2012 N.C. Sess. Laws 148
 
 (eff. 12 July 2012). To meet the requirements of
 
 Miller,
 
 the first section of the Act established new sentencing guidelines for defendants convicted of first-degree murder who were under the age of eighteen at the time of their offense.
 
 See
 

 2012 N.C. Sess. Laws 148
 
 , sec. 1. The new sentencing guidelines, originally designated to be codified in Article 93 of Chapter 15A of the North Carolina General Statutes as N.C. Gen.Stat. §§ 15A-1476 to -1479, are now codified in Part 2A of Chapter 81B of Chapter 15A of the North Carolina General Statutes as N.C. Gen.Stat. §§ 15A-1340.19A to -1340.19D. N.C. Gen.Stat. § 14-17 was later amended to indicate that juveniles were to be sentenced pursuant to the new sentencing guidelines.
 
 See
 

 2013 N.C. Sess. Laws 410
 
 , sec. 3(a) (eff. 23 August 2013) (amending N.C. Gen.Stat. § 14-17 to provide that "any person who commits such murder shall be punished with death or imprisonment in the State's prison for life without parole as the court shall determine pursuant to G.S. 15A-2000,
 
 except that any such person who was under 18 years of age at the time of the murder shall be punished in accordance with Part 2A of Article 81B of Chapter 15A of the General Statutes.
 
 ") (emphasis added).
 

 Following the enactment of the Act, our Supreme Court, by special order on 23 August 2012, allowed defendant's petition in this case as follows:
 

 Defendant's Petition for Discretionary Review as amended is allowed for the limited purpose of remanding to the Court of Appeals for further remand to the trial court for resentencing pursuant to [the new sentencing guidelines].
 

 State v. James,
 

 366 N.C. 214
 
 ,
 
 748 S.E.2d 527
 
 (2012).
 

 *355
 
 Prior to defendant's case coming on for resentencing, defendant filed various motions with memorandums of law seeking to avoid resentencing pursuant to N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 Those motions
 
 *77
 
 raised many of the same issues now before this Court on appeal.
 

 On 5 December 2014, defendant's case came on for a resentencing hearing in Mecklenburg County Superior Court before the Honorable Robert F. Johnson. That sentencing hearing continued on 8 December 2014 and concluded on 12 December 2014. Upon considering defendant's motions, the trial court denied the motions and proceeded to resentence defendant to life imprisonment without parole for first-degree murder pursuant to N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 The judgment indicated it was
 
 nunc pro tunc
 
 10 June 2010. A resentencing order filed the same day was attached to the judgment. Defendant gave notice of appeal in open court.
 

 II.
 
 Discussion
 

 In
 
 State v. Lovette,
 

 225 N.C.App. 456
 
 ,
 
 737 S.E.2d 432
 
 (2013) ("
 
 Lovette I
 
 "), this Court summarized the pertinent portions of the new sentencing guidelines in N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 as follows:
 

 [N.C. Gen.Stat. § ] 15A-1340.19B(a) provides that if the defendant was convicted of first-degree murder
 
 solely
 
 on the basis of the felony murder rule, his sentence shall be life imprisonment with parole. N.C. Gen.Stat. § 15A-1340.19B(a)(1) (2012). In all other cases, the trial court is directed to hold a hearing to consider any mitigating circumstances,
 
 inter alia,
 
 those related to the defendant's age at the time of the offense, immaturity, and ability to benefit from rehabilitation. N.C. Gen.Stat. §§ 15A-1340.19B, 15A-1340.19C. Following such a hearing, the trial court is directed to make findings on the presence and/or absence of any such mitigating factors, and is given the discretion to sentence the defendant to life imprisonment either with or without parole. N.C. Gen.Stat. §§ 15A-1340.19B(a)(2), 15A-1340.19C(a).
 

 Id.
 

 at 470
 
 ,
 
 737 S.E.2d at 441
 
 (footnote omitted). Defendant now asserts constitutional arguments against his resentencing pursuant to N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 Defendant also argues the trial court failed to make proper findings of fact and abused its discretion in imposing a sentence of life without parole. We address the issues in the order they are raised on appeal.
 

 *356
 
 "The standard of review for alleged violations of constitutional rights is
 
 de novo."
 

 State v. Graham,
 

 200 N.C.App. 204
 
 , 214,
 
 683 S.E.2d 437
 
 , 444 (2009),
 
 appeal dismissed and disc. review denied,
 

 363 N.C. 857
 
 ,
 
 694 S.E.2d 766
 
 (2010). "The standard of review for application of mitigating factors is an abuse of discretion."
 
 State v. Hull,
 

 236 N.C.App. 415
 
 , 421,
 
 762 S.E.2d 915
 
 , 920 (2014).
 

 1.
 
 Ex Post Facto
 

 Defendant first argues that his resentencing pursuant to N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 violates the constitutional prohibitions on
 
 ex post facto
 
 laws.
 
 See
 
 U.S. Const. art. I, § 10, cl. 1 ; N.C. Const. art. I, § 16. Defendant contends he should have been resentenced "consistent with sentencing alternatives available as of the date of the commission of the offense [,]" specifically, "within the range for the lesser-included offense of second-degree murder." We are not persuaded.
 

 Pertinent to this appeal, our Courts have "defined an
 
 ex post facto
 
 law as one which ... allows imposition of a different or greater punishment than was permitted when the crime was committed...."
 
 State v. Vance,
 

 328 N.C. 613
 
 , 620,
 
 403 S.E.2d 495
 
 , 500 (1991) (citing
 
 Calder v. Bull,
 

 3 U.S. 386
 
 , 390,
 
 3 Dall. 386
 
 ,
 
 1 L.Ed. 648
 
 , 650 (1798) ). Our Courts have also recognized that "[t]here are two critical elements to an
 
 ex post facto
 
 law: that it is applied to events occurring before its creation and that it disadvantages the accused that it affects."
 
 State v. Barnes,
 

 345 N.C. 184
 
 , 234,
 
 481 S.E.2d 44
 
 , 71 (1997).
 

 There is no dispute concerning the first element in this case. N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 was enacted on 12 July 2012, over six years after defendant committed the offense on 12 May 2006. Thus, the trial court's application of N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 in resentencing defendant was retroactive.
 

 Regarding the second element, defendant claims he was disadvantaged by the retroactive application of N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 Upon review, we
 
 *78
 
 hold there is no merit to defendant's claim. As noted above, at the time defendant committed the offense, N.C. Gen.Stat. § 14-17 mandated that defendant be sentenced to life without parole. N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 

 ,
 
 enacted by the General Assembly in response to the United States Supreme Court's holding in
 
 Miller
 
 that mandatory sentences of life without parole for juvenile offenders are unconstitutional, does not impose a different or greater punishment than was permitted when the crime was committed; nor does it disadvantage defendant in any way. N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 

 *357
 
 merely provides sentencing guidelines that address the concerns raised in
 
 Miller
 
 by requiring a sentencing hearing in which the trial court must consider mitigating circumstances before imposing a sentence of life without parole, the harshest penalty for a juvenile. Thus, under N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 

 ,
 
 the harshest penalty remains life without parole, but the trial court has the option of imposing a lesser sentence of life imprisonment with parole.
 
 See
 
 N.C. Gen.Stat. § 15A-1340.19B(a)(2).
 

 Nevertheless, defendant contends that he should have been resentenced to the most severe constitutional penalty at the time the offense was committed. Defendant claims "[t]he only constitutional sentence [he] could have received was a sentence within the range for the lesser-included offense of second-degree murder[,]" which would have resulted in a lesser sentence. In support of his argument, defendant relies on cases from other jurisdictions.
 
 See
 

 State v. Roberts,
 

 340 So.2d 263
 
 (La.1976) ;
 
 Jackson v. Norris,
 

 2013 Ark. 175
 
 ,
 
 426 S.W.3d 906
 
 (2013) ;
 
 Commonwealth v. Brown,
 

 466 Mass. 676
 
 ,
 
 1 N.E.3d 259
 
 (2013). Yet, in the cases cited by defendant, there is no indication that the legislatures in those states enacted new sentencing guidelines that controlled after the mandatory sentences provided in their respective statutes were determined unconstitutional. In fact, the court in
 
 Brown
 
 indicated that the trial judge's sentencing approach was due in part to the fact that "the Legislature had not prescribed the procedures for the individualized sentencing hearing contemplated by
 
 Miller
 
 [.]"
 
 1 N.E.3d at 262
 
 . As a result, the courts in those cases severed the unconstitutional portions of the statutes in effect at the time of the offenses and sentenced the defendants pursuant to the remaining constitutional portions of the statutes.
 
 [1]
 

 In the present case, however, the General Assembly acted quickly in response to
 
 Miller
 
 and passed the Act, establishing new sentencing
 
 *358
 
 guidelines in N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 for juveniles convicted of first-degree murder. The General Assembly made clear that N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 was to apply retroactively, providing in the third section of the Act that, in addition to sentencing hearings held on or after the effective date of the Act, the Act "applies to any resentencing hearings required by law for a defendant who was under the age of 18 years at the time of the offense, was sentenced to life imprisonment without parole prior to the effective date of this act, and for whom a resentencing hearing has been ordered."
 
 2012 N.C. Sess. Laws 148
 
 , sec. 3.
 

 Because N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 does not impose a more severe punishment than that originally mandated in N.C. Gen.Stat. § 14-17, but instead provides sentencing guidelines that comply with the United States Supreme Court's decision in
 
 Miller
 
 and allows the trial court discretion to impose
 
 *79
 
 a lesser punishment based on applicable mitigating factors, defendant could not be disadvantaged by the application of N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 Thus, there is no violation of the constitutional prohibitions on
 
 ex post facto
 
 laws.
 

 2.
 
 Presumption
 

 Defendant next argues N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 violates the constitutional guarantees against cruel and unusual punishment.
 
 See
 
 U.S. Const. Amend. 8 ; N.C. Const. art. I, § 27. Specifically, defendant contends N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 presumptively favors a sentence of life without parole for juveniles convicted of first-degree murder and, therefore, the risk of disproportionate punishment under N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 is as great as it was when N.C. Gen.Stat. § 14-17 mandated a sentence of life without parole for juveniles convicted of first-degree murder.
 

 Defendant relies on the language in N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 to support his argument that there is a presumption in favor of life without parole. Specifically, defendant points to N.C. Gen.Stat. § 15A-1340.19C(a), which provides, "[t]he court shall consider any
 
 mitigating factors
 
 in determining whether, based upon all the circumstances of the offense and the particular circumstances of the defendant, the defendant should be sentenced to life imprisonment with parole
 
 instead of
 
 life imprisonment without parole." N.C. Gen.Stat. § 15A-1340.19C(a) (emphasis added). Defendant contends that the inclusion of only "mitigating factors" and the use of "instead of" demonstrates there is a presumption in favor of life without parole.
 

 *359
 
 We first note that the use of "instead of," considered alone, does not show there is a presumption in favor of life without parole. Even the definitions of "instead of" quoted by defendant,
 
 see
 

 Duer v. Hoover & Bracken Energies, Inc.
 

 753 P.2d 395
 
 , 398 (Okla.Ct.App.1986) ("as a substitute for or alternative to"); The American Heritage Dictionary of the English Language, 909 (5th ed.2011) ("[i]n place of something previously mentioned"), seem to indicate that "instead of" is merely used to distinguish between sentencing options. This is consistent with N.C. Gen.Stat. § 15A-1340.19B (a)(2), which states, "the court shall conduct a hearing to determine whether the defendant should be sentenced to life imprisonment without parole, as set forth in [N.C. Gen.Stat. § ] 14-17,
 
 or
 
 a lesser sentence of life imprisonment with parole." N.C. Gen.Stat. § 15A-1340.19B(a)(2) (emphasis added).
 

 Yet, the reason for the General Assembly's use of "instead of" in N.C. Gen.Stat. § 15A-1340.19C(a), as opposed to "or," becomes clear when considered in light of the fact that the sentencing guidelines require the court to consider only mitigating factors. Because the statutes only provide for mitigation from life without parole to life with parole and not the other way around, it seems the General Assembly has designated life without parole as the default sentence, or the starting point for the court's sentencing analysis. Thus, to the extent that starting the sentencing analysis with life without parole creates a presumption, we agree with defendant there is a presumption.
 

 We decline, however, to hold that presumption is unconstitutional and we do not think N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 "turns
 
 Miller
 
 on its head by making life without parole sentences the norm, rather than the exception [,]" as defendant asserts. In
 
 Miller,
 
 the Court made clear that it was not holding sentences of life without parole for juveniles unconstitutional.
 
 See
 
 567 U.S. at ----,
 
 132 S.Ct. at 2469
 
 ,
 
 183 L.Ed.2d at 424
 
 ("Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.") The Court's holding in
 
 Miller
 
 simply requires "that sentencing courts consider a child's 'diminished culpability and heightened capacity for change' before condemning him or her to die in prison."
 
 Montgomery v. Louisiana,
 
 --- U.S. ----, ----,
 
 136 S.Ct. 718
 
 , 726,
 
 193 L.Ed.2d 599
 
 , 610-11 (2016) (quoting
 
 Miller,
 
 567 U.S. at ----,
 
 132 S.Ct. at 2469
 
 ,
 
 183 L.Ed.2d at
 
 424 ). A review of N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 reveals the sentencing guidelines do just that. Instead of imposing
 
 *80
 
 a mandatory sentence of life without parole, the sentencing guidelines in N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 require the sentencing court to hold a sentencing hearing during
 
 *360
 
 which the defendant may submit mitigating circumstances, including the defendant's "youth (and all that accompanies it)[,]"
 
 Miller,
 
 576 U.S. at ----,
 
 132 S.Ct. at 2469
 
 ,
 
 183 L.Ed.2d at 424
 
 , which the trial court must consider in determining whether to sentence defendant to life without parole or life with parole. As noted in our discussion of defendant's first issue, these sentencing guidelines seem to comply precisely with the requirements of
 
 Miller.
 

 Moreover, given that N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 was enacted in response to
 
 Miller
 
 to allow the youth of a defendant and its attendant characteristics to be considered in determining whether a lesser sentence than life without parole is warranted, it seems commonsense that the sentencing guidelines would begin with life without parole, the sentence provided for adults in N.C. Gen.Stat. § 14-17 that the new guidelines were designed to deviate from.
 
 See
 
 N.C. Gen.Stat. § 15A-1340.19B(a)(2) (referring to "life imprisonment without parole, as set forth in [N.C. Gen.Stat. § ] 14-17 [ ]"). This commonsense approach is supported by repeated references to mitigation in
 
 Miller
 
 and the cases it relies on. For example, the Court in
 
 Miller
 
 refers to the "mitigating qualities of youth," 567 U.S. at ----,
 
 132 S.Ct. at 2467
 
 ,
 
 183 L.Ed.2d at 422
 
 , and explains that "
 
 Graham, Roper
 
 , and our individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." 567 U.S. at ----,
 
 132 S.Ct. at 2475
 
 ,
 
 183 L.Ed.2d at 430
 
 .
 

 While the Court did indicate in
 
 Miller
 
 that it thought "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon[,]" the Court explained that its belief was based on "all [it had] said in
 
 Roper, Graham
 
 , and [
 
 Miller
 
 ] about children's diminished culpability and heightened capacity for change[ ]" and "the great difficulty [it] noted in
 
 Roper
 
 and
 
 Graham
 
 of distinguishing at [an] early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.' " 576 U.S. at ----,
 
 132 S.Ct. at 2469
 
 ,
 
 183 L.Ed.2d at 424
 
 (quoting
 
 Roper,
 

 543 U.S. at 573
 
 ,
 
 125 S.Ct. 1183
 
 ,
 
 161 L.Ed.2d 1
 
 ;
 
 Graham,
 

 560 U.S. at 68
 
 ,
 
 130 S.Ct. 2011
 
 ,
 
 176 L.Ed.2d 825
 
 ). Explaining that
 
 Miller
 
 announced a substantive rule of constitutional law, the Court has since stated that although
 
 Miller
 
 "did not bar a punishment for all juvenile offenders, as the Court did in
 
 Roper
 
 or
 
 Graham
 
 [,]
 
 Miller
 
 did bar life without parole ... for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility."
 
 Montgomery,
 
 --- U.S. at ----,
 
 136 S.Ct. at 734
 
 ,
 
 193 L.Ed.2d at 620
 
 .
 

 Upon review, nothing in N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 conflicts with the Court's belief that sentences of life without parole for juvenile defendants will be uncommon or the substantive rule of law.
 

 *361
 
 N.C. Gen.Stat. § 15A-1340.19C(a) requires the sentencing court to take mitigating factors into consideration. With proper application of the sentencing guidelines in light of
 
 Miller,
 
 it may very well be the uncommon case that a juvenile is sentenced to life without parole under N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 

 For these reasons, we hold it is not inappropriate, much less unconstitutional, for the sentencing analysis in N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 to begin with a sentence of life without parole and require the sentencing court to consider mitigating factors to determine whether the circumstances are such that a juvenile offender should be sentenced to life with parole instead of life without parole. Life without parole as the starting point in the analysis does not guarantee it will be the norm.
 

 3.
 
 Due Process
 

 In his last constitutional challenge, defendant argues N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 deprives him of the right to due process of law,
 
 see
 
 U.S. Const. Amend. 14 ; N.C. Const. art. I, § 19, because the law is unconstitutionally vague and will lead to arbitrary sentencing decisions for juvenile offenders.
 

 *81
 
 In
 
 State v. Green,
 

 348 N.C. 588
 
 ,
 
 502 S.E.2d 819
 
 (1998), our Supreme Court explained that "[i]t is an essential element of due process of law that statutes contain sufficiently definite criteria to govern a court's exercise of discretion."
 
 348 N.C. at 596
 
 ,
 
 502 S.E.2d at 823
 
 . In construing whether a statute contains sufficient criteria, the Court begins with the presumption that the statute is constitutional.
 
 Id.
 
 at 596,
 
 502 S.E.2d at 824
 
 . The court then strictly construes the statute in a manner that allows the intent of the legislature to control.
 

 Id.
 

 Intent of the legislature may be determined by the circumstances surrounding enactment of the statute.
 

 Id.
 

 Under a challenge for vagueness, the [United States] Supreme Court has held that a statute is unconstitutionally vague if it either: (1) fails to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited"; or (2) fails to "provide explicit standards for those who apply [the law]."
 

 Id.
 
 at 597,
 
 502 S.E.2d at 824
 
 (quoting
 
 Grayned v. City of Rockford,
 

 408 U.S. 104
 
 , 108,
 
 92 S.Ct. 2294
 
 , 2298,
 
 33 L.Ed.2d 222
 
 , 227 (1972) ). The North Carolina standard is nearly identical.
 

 Id.
 

 (citing
 
 In re Burrus,
 

 275 N.C. 517
 
 , 531,
 
 169 S.E.2d 879
 
 , 888 (1969) ("When the language of a statute provides an adequate warning as to the conduct it condemns and prescribes boundaries
 
 *362
 
 sufficiently distinct for judges and juries to interpret and administer it uniformly, constitutional requirements are fully met."))
 

 As in
 
 Green,
 
 defendant only challenges the second prong of the vagueness standard, the "guidance" component, in this case. Defendant does not challenge the vagueness standard's first prong, the "notice" requirement.
 

 Specifically, defendant contrasts the sentencing guidelines in N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 with those for capital sentencing, N.C. Gen.Stat. § 15A-2000, and structured sentencing, N.C. Gen.Stat. § 15A-1340.16, in that the sentencing guidelines do not provide for the consideration of aggravating factors. Because the sentencing guidelines do not provide a process to weigh aggravating and mitigating factors, defendant contends the sentencing guidelines in N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 "fail[ ] to provide any process by which a court can identify the few children who warrant life in prison without parole." We disagree.
 

 A review of sentencing guidelines is important. N.C. Gen.Stat. § 15A-1340.19B sets forth the procedure for sentencing a defendant who was a juvenile at the time they committed first-degree murder. As previously quoted, it first requires that if defendant is not convicted of first-degree murder solely on the basis of the felony murder rule, "the court shall conduct a hearing to determine whether the defendant should be sentenced to life imprisonment without parole, as set forth in [N.C. Gen.Stat. § ] 14-17, or a lesser sentence of life imprisonment with parole." N.C. Gen.Stat. § 15A-1340.19B(a)(2). Subsection (b) then provides for the consideration of evidence at the sentencing hearing. Subsection (b) does not require evidence presented during the guilt determination phase of the trial to be resubmitted, but provides that "[e]vidence, including evidence in rebuttal, may be presented as to any matter that the court deems relevant to sentencing, and any evidence which the court deems to have probative value may be received." N.C. Gen.Stat. § 15A-1340.19B(b). That evidence includes evidence of mitigating factors. Specifically, subsection (c) provides that a defendant "may submit mitigating circumstances to the court[.]" N.C. Gen.Stat. § 15A-1340.19B(c). Those mitigating circumstances may include, but are not limited to, the following: "(1) Age at the time of the offense[;] (2) Immaturity [;] (3) Ability to appreciate the risks and consequences of the conduct[;] (4) Intellectual capacity[;] (5) Prior record[;] (6) Mental health[;] (7) Familial or peer pressure exerted upon the defendant[; and] (8) Likelihood that the defendant would benefit from rehabilitation in confinement."
 

 Id.
 

 The list also includes, "(9) Any other mitigating factor
 
 *363
 
 or circumstance."
 

 Id.
 

 Both the State and the defendant are "permitted to present argument for or against the sentence of life imprisonment with parole." N.C. Gen.Stat. § 15A-1340.19B(d). In conjunction with N.C. Gen.Stat. § 15A-1340.19B, N.C. Gen.Stat. § 15A-1340.19C requires "[t]he court [to] consider any mitigating factors in determining whether, based upon all the circumstances
 
 *82
 
 of the offense and the particular circumstances of the defendant, the defendant should be sentenced to life imprisonment with parole instead of life imprisonment without parole." N.C. Gen.Stat. § 15A-1340.19C(a).
 

 Upon review of these sentencing guidelines, we reiterate what we have noted in our discussion of the first two issues on appeal-the guidelines comply precisely with the requirements in
 
 Miller.
 
 The sentencing guidelines require a sentencing hearing at which a defendant may present mitigating factors related to youth and its attendant characteristics which, in turn, the sentencing court must consider before imposing a sentence of life without parole. Although N.C. Gen.Stat. § 15A-1340.19C(a) simply directs the court to "consider" mitigating factors, when viewed in light of the circumstances surrounding enactment, that is through the lens of
 
 Miller,
 
 we hold N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 is not unconstitutionally vague and will not lead to arbitrary sentencing decisions. The discretion of the sentencing court is guided by
 
 Miller
 
 and the mitigating factors provided in N.C. Gen.Stat. § 15A-1340.19B(c).
 

 We also note that in addressing a comparison between the discretion afforded in N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 and capital punishment sentencing similar to defendant's comparison in this case, in
 
 State v. Lovette,
 
 ---N.C.App. ----,
 
 758 S.E.2d 399
 
 (2014) ("
 
 Lovette II
 
 "), this Court stated that "our capital sentencing statutes have no application[.]" - -- N.C.App. at ----,
 
 758 S.E.2d at 406
 
 . This Court further explained that "[a]lthough there is some common constitutional ground between adult capital sentencing and sentencing a juvenile to life imprisonment without parole, these similarities do not mean the United States Supreme Court has directed or even encouraged the states to treat cases such as this under an adult capital sentencing scheme."
 

 Id.
 

 Defendant also argues N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 violates his right to trial by jury. In support of his arguments, defendant again compares N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 to capital sentencing and structured sentencing, which require a jury to determine the existence of aggravating factors.
 
 See
 

 State v. Everette,
 

 361 N.C. 646
 
 , 650,
 
 652 S.E.2d 241
 
 , 244 (2007) ("[I]n most instances, aggravating factors increasing a defendant's sentence must be submitted to a jury and
 
 *364
 
 proved beyond a reasonable doubt.") (citing
 
 Blakely v. Washington,
 

 542 U.S. 296
 
 ,
 
 124 S.Ct. 2531
 
 ,
 
 159 L.Ed.2d 403
 
 (2004) ). However, as defendant asserts in his void for vagueness argument, N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 does not require the finding of aggravating factors. The sentencing guidelines only require the sentencing court to consider the mitigating circumstances of defendant's youth to determine whether a lesser punishment of life without parole is appropriate. Thus, no jury determination was required and defendant's argument is without merit.
 

 4.
 
 Findings of Fact
 

 In the first non-constitutional issue raised on appeal, defendant contends the trial court failed to make adequate findings of fact to support its decision to impose a sentence of life without parole. We agree.
 

 N.C. Gen.Stat. § 15A-1340.19C provides that "[t]he order adjudging the sentence shall include findings on the absence or presence of any mitigating factors and such other findings as the court deems appropriate to include in the order." N.C. Gen.Stat. § 15A-1340.19C(a). In
 
 State v. Antone,
 
 ---N.C.App. ----,
 
 770 S.E.2d 128
 
 (2015), this Court noted that " 'use of the language "shall" is a mandate to trial judges, and that failure to comply with the statutory mandate is reversible error.' " - -- N.C.App. at ----,
 
 770 S.E.2d at 130
 
 (quoting
 
 In re Eades,
 

 143 N.C.App. 712
 
 , 713,
 
 547 S.E.2d 146
 
 , 147 (2001) ). This Court then reversed the trial court's decision in
 
 Antone
 
 to sentence the juvenile offender to life without parole, holding the trial court's one-page sentencing order did not contain sufficient findings of fact to meet the mandate in N.C. Gen.Stat. § 15A-1340A.19C(a).
 

 Id.
 

 at ----,
 
 770 S.E.2d at 130
 
 . This Court explained as follows:
 

 The trial court's order makes cursory, but adequate findings as to the mitigating circumstances set forth in N.C. Gen.Stat. § 15A-1340.19B(c)(1), (4), (5), and (6).
 

 *83
 
 The order does not address factors (2), (3), (7), or (8). In the determination of whether the sentence of life imprisonment should be with or without parole, factor (8), the likelihood of whether a defendant would benefit from rehabilitation in confinement, is a significant factor.
 

 We also note that portions of the findings of fact are more recitations of testimony, rather than evidentiary or ultimate findings of fact. The better practice is for the trial court to make evidentiary findings of fact that resolve any conflicts in the evidence, and then to make ultimate findings of fact that apply the evidentiary findings to the
 
 *365
 
 relevant mitigating factors as set forth in N.C. Gen.Stat. § 15A-1340.19B(c). If there is no evidence presented as to a particular mitigating factor, then the order should so state, and note that as a result, that factor was not considered.
 

 Id.
 

 at ----,
 
 770 S.E.2d at 130-31
 
 (internal citations omitted).
 

 The present case is easily distinguishable from
 
 Antone
 
 in that the trial court's order spans ten pages and includes thirty-four findings of fact. Yet, despite acknowledging that the resentencing order "describes in great detail trial facts as to the offense and evidence elicited at the resentencing hearing[,]" defendant still contends the findings are insufficient. Defendant asserts that "[n]owhere in the order did the resentencing court indicate which evidence demonstrated 'the absence or presence of any mitigating factors.' " We agree.
 

 As the defendant acknowledges, the trial court did issue many findings concerning both the circumstances of the offense and the circumstances of defendant. Many of those findings go to factors identified as mitigating factors in N.C. Gen.Stat. § 15A-1340.19B(c), such as age, upbringing, living environment, prior incidents, and intelligence. But, it is unclear from the order whether many of the findings are mitigating or not. For example, and as pointed out by defendant, the trial court found in finding number twenty-three, "[d]efendant was once a member of the 'Bloods' gang and wore a self-made tattoo of a 'B' on his arm." Yet that finding further provided, "[a]s of October, 2005 [defendant] was no longer affiliated with the gang. He had been referred to the Charlotte Mecklenburg Police Department 'Gang of One' program that worked with former gang members." This finding could be interpreted different ways-defendant was capable of rehabilitation or rehabilitative efforts had failed. Similarly, the trial court found in finding of fact number nine that "[a]t the time of the crime [defendant] was 16 years, 9 months old." While the finding makes clear that defendant was a juvenile, it is unclear whether defendant's age is mitigating or not. In finding of fact number twenty-six, the trial court found that "individuals around the age of 16 can typically engage in cognitive behavior which requires thinking through things and reasoning, but not necessarily self-control." In that same finding, however, the trial court also found, "[t]hings that may affect an individual's psycho-social development may be environment, basic needs, adult supervision, stressful and toxic environment, peer pressure, group behavior, violence, neglect, and physical and/or sexual abuse." The trial court's other findings show that defendant has experienced many of those things found by the trial court to affect development.
 

 *366
 
 Instead of identifying which findings it considered mitigating and which were not, after making its findings, the trial court summarized its considerations in finding of fact thirty-four as follows:
 

 The Court, has considered the age of the Defendant at the time of the murder, his level of maturity or immaturity, his ability to appreciate the risks and consequences of his conduct, his intellectual capacity, his one prior record of juvenile misconduct (which this Court discounts and does not consider to be pivotal against the Defendant, but only helpful as to the light the juvenile investigation sheds upon Defendant's unstable home environment), his mental health, any family or peer pressure exerted upon defendant, the likelihood that he would benefit from rehabilitation in confinement, the evidence offered by Defendant's witnesses as to brain development in juveniles and adolescents, and all of the probative evidence offered by both parties
 
 *84
 
 as well as the record in this case. The Court has considered Defendant's statements to the police and his contention that it was his co-defendant ... who planned and directed the commission of the crimes against [the victim], the Court does note that in some of the details and contentions the statement is self-serving and contradicted by physical evidence in the case. In the exercise of its informed discretion, the Court determines that based upon all the circumstances of the offense and the particular circumstances of the Defendant that the mitigating factors found above, taken either individually or collectively, are insufficient to warrant imposition of a sentence of less than life without parole.
 

 This finding in no way demonstrates the "absence or presence of any mitigating factors." It simply lists the trial court's considerations and final determination. We hold this finding insufficient and require the trial court to identify which considerations are mitigating and which are not.
 

 Additionally, other considerations listed by the trial court are not supported by findings. "[A] finding of 'irreparable corruption' is not required,"
 
 Lovette II,
 
 --- N.C.App. at ----,
 
 758 S.E.2d at 408
 
 , but "the likelihood of whether a defendant would benefit from rehabilitation in confinement[ ] is a significant factor."
 
 Antone,
 
 --- N.C.App. at ----,
 
 770 S.E.2d at 130
 
 . In finding of fact thirty-four, the trial court indicated that it took into consideration "the likelihood that [defendant] would benefit from rehabilitation in confinement." Yet, there is no finding of fact concerning
 
 *367
 
 the likelihood of rehabilitation. In fact, in finding of fact number twenty-seven, the trial court found that the clinical psychologist "was unable to say with any certainty that ... [defendant] would or would not reoffend."
 

 While the order was extensive in detailing the evidence, it did not "include findings on the absence or presence of any mitigating factors" as mandated in N.C. Gen.Stat. § 15A-1340.19C(a).
 

 5.
 
 Abuse of Discretion
 

 In the last issue on appeal, defendant argues the trial court abused its discretion in resentencing him to life without parole under N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 In support of his argument, defendant distinguishes the circumstances in his case from those considered in
 
 Lovette II,
 
 in which this Court determined the trial court did not err in sentencing a juvenile offender to life without parole. - -- N.C.App. at ----,
 
 758 S.E.2d at 410
 
 .
 

 As this Court stated in
 
 Lovette II,
 
 "[t]he findings of fact must support the trial court's conclusion that defendant should be sentenced to life imprisonment without parole[.]"
 

 Id.
 

 at ----,
 
 758 S.E.2d at 408
 
 . "The trial judge may be reversed for abuse of discretion only upon a showing that his ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision."
 
 State v. Westall,
 

 116 N.C.App. 534
 
 , 551,
 
 449 S.E.2d 24
 
 , 34 (1994). Having just held the trial court did not issue adequate findings of fact, we must hold the trial court abused its discretion in sentencing defendant to life without parole. This holding, however, expresses no opinion on whether such sentence may be appropriate on remand; it is based solely on the trial court's consideration of inadequate findings as to the presence or absence of mitigating factors to support its determination.
 

 III. Conclusion
 

 For the reasons discussed, we affirm the constitutionality of N.C. Gen.Stat. § 15A-1340.19A
 
 et seq.
 
 However, the trial court did not issue sufficient findings of fact on the absence or presence of mitigate factors as required by N.C. Gen.Stat. § 15A-1340.19C(a). As a result, it is difficult for this Court to review the trial court's determination that life without parole was appropriate in this case and we must reverse and remand to the trial court for further sentencing proceedings.
 

 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 

 Judges BRYANT and GEER concur.
 

 [1]
 

 In
 
 Roberts,
 
 the defendant's death sentence was unconstitutional and the court remanded with instructions for the lower court to resentence the defendant to "imprisonment at hard labor for life without eligibility for parole, probation or suspension of sentence for a period of twenty years[,]" the most severe constitutional penalty for criminal homicide at the time.
 
 340 So.2d at 263-64
 
 . In
 
 Jackson,
 
 the juvenile defendant's mandatory sentence of life without parole for capital murder was unconstitutional and the court remanded with instructions that the lower court "hold a sentencing hearing where [the defendant] may present
 
 Miller
 
 evidence for consideration[ ]" and "[the defendant's] sentence must fall within the statutory discretionary sentencing range for a Class Y felony[,] ... a discretionary sentencing range of not less than ten years and not more than forty years, or life."
 
 426 S.W.3d at 911
 
 . In
 
 Brown,
 
 the juvenile defendant's mandatory sentence of life without parole for first-degree murder was unconstitutional and the court remanded to the lower court for resentencing with instructions that the defendant be sentenced to a mandatory sentence of life with the possibility of parole.
 
 1 N.E.3d at 268
 
 .