Shawn A. Womack, Justice, dissenting.
The Fair Sentencing of Minors Act of 2017 ("FSMA") was thoughtfully designed by the General Assembly to address, in two ways, the constitutional questions regarding the sentencing of convicted murderers who committed their crimes while they were still minors. First, it responded to the United States Supreme Court decisions in Miller v. Alabama , 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) and Montgomery v. Louisiana , --- U.S. ----, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016). Second, it amended the sentencing statute *74 for juvenile offenders committing capital murder or first-degree murder.
The decision in Miller left the Arkansas sentencing statute constitutionally defective as it pertained to the sentences of those who committed capital or first-degree murder as minors. The first prong of the FSMA sought to follow the road map laid out by the Supreme Court in Montgomery by statutorily curing the defect for those who were sentenced prior to Miller . This first prong specifically and retroactively provided parole eligibility to those juvenile offenders sentenced under the previous version of the statute. The second prong addressed the underlying sentencing statute to cure its constitutional defects.
Determining the sentencing ranges for crimes committed within our state is a policy determination that belongs to the people through their elected representatives in the legislative branch. State v. Freeman , 312 Ark. 34, 37, 846 S.W.2d 660, 661 (1993) ("It is well settled that it is for the legislative branch ... to determine the kind of conduct that constitutes a crime and the nature and extent of punishment which may be imposed."). It is the role of the judiciary to apply those sentences within the legislatively determined range when a defendant is convicted, so long as the terms of the sentencing statute are not constitutionally defective. On rare occasions the courts are faced with a statutory void and they must step in and act when there is an absence of legislative action or, as in this case, when the void is created by a constitutionally infirm action.
Mr. Harris is part of a class of people who have come to be known as "the Miller defendants." The so-called Miller defendants were convicted of murders that were committed while they were still minors and sentenced to life without parole under a statute that was then presumed to be constitutional. Then, the Supreme Court in Miller determined that sentencing a defendant to life without parole for a crime committed as a juvenile violated the United States Constitution. That decision created a vacuum in Arkansas' sentencing structure where, without legislative action, this court was forced to step in and fashion a constitutional remedy in two cases, Jackson v. Norris , 2013 Ark. 175, 426 S.W.3d 906, and Kelley v. Gordon , 2015 Ark. 277, 465 S.W.3d 842. In Jackson , this court severed the defective statute as it applied to juveniles, ordered a new sentencing hearing to consider the factors laid out in Miller , and proscribed a sentencing range of 10 to 40 years or life. Gordon , also decided during the vacuum, received the same treatment.
The decisions in Jackson and Gordon , while appropriate given the then existing circumstances, were isolated in time between the Miller and Montgomery decisions and prior to the passage of the FSMA. Accordingly, the remedies in those cases-a new sentencing hearing under the severed statute with Miller evidence presented-should also be isolated and are no longer necessary for the fair and just disposition of cases involving the so-called Miller defendants, including Harris. The General Assembly, through the passage of the FSMA, has removed the need for any further Jackson based resolutions in a way that is consistent with Montgomery .
The effect of Miller was to render our statute defective. The effect of the FSMA was to cure the defect in the statute. Jackson and Gordon were resentenced during the period of defect; the other Miller defendants were not. Harris argues that the FSMA cannot apply to him because his original sentence was vacated prior to the passage of the Act. However, he was not resentenced before the Act took effect. The key event from a timing standpoint is *75 not the date of the granting of his habeas corpus petition, which was a necessary formality on the road to resentencing, but rather the date of his resentencing itself. At the time of Harris's resentencing, the FSMA was effective, and the defect in the statute under which Harris had originally been sentenced was cured via the parole-eligibility provisions of the FSMA.
There is no question that the sentencing provision under the FSMA, life with parole eligibility after 30 years for capital murder or life with parole eligibility after 25 years for first-degree murder, is more lenient than the original provision of the statute that existed at the time of Harris's conviction. There is also no question that the Jackson remedy sought by Harris-a new hearing with a sentencing range of 10 to 40 years or life-is more lenient than the original provision of the statute that existed at the time of Harris's conviction. The difference is that one was judicially created by this court in a vacuum as a necessary, but temporary, resolution to the Miller situation, while the other was legislatively created as a permanent solution to Miller .
Whether we apply the FSMA or the Jackson remedy to Harris, he will end up with a sentence that is more lenient than any sentence he could have received under the statute in place at the time of his conviction. Either way, the timeline of events is still constrained to the following factual sequence: (1) Harris was convicted of committing capital murder while he was a juvenile; (2) Harris was sentenced under a statute that required life without parole (a presumed valid sentence at the time); (3) the Supreme Court decided Miller and prohibited mandatory life sentences for juvenile offenders, creating a defect in the statute and a void in the law in Arkansas; (4) the defective statute was severed by this court in Jackson and then cured by the General Assembly when it enacted the FSMA and provided a uniform parole-eligibility component for juvenile offenders; and (5) Harris was resentenced.
What Harris has asked us to do, and what the majority has, in fact, done today, is to choose the judicially created response to Miller while ignoring the legislative cure of the statute, which was expressly permitted under Montgomery . I believe that this is the wrong approach, and I would instead remand this case to the circuit court with an instruction to sentence Harris, without a new hearing, to "life imprisonment with the possibility of parole after serving a minimum of thirty (30) years' imprisonment." Ark. Code Ann. § 5-10-101(c) (Supp. 2017).
Finally, I would be remiss if I did not highlight that the practical effect of the majority's decision today extends far beyond the case of Mr. Harris. It is estimated that there are over 50 so-called Miller defendants who need to be resentenced. Some with convictions from more than two decades ago. By needlessly ignoring the FSMA, this court has not only opened the flood gates but has also likely opened the prison doors. This decision means that there will now be over 50 individual resentencing hearings throughout the state, many in cases in which key witnesses have either died, retired from their positions in law enforcement and moved away, or are otherwise unavailable. It means that some, if not several, of these convicted murderers could serve as little as 10 years for their crimes and others could be released with a sentence of time served for murders occurring before 2008. It means that the families of the victims will be forced to relive these tragedies as they endure these unnecessary hearings. It also means that not only will the resources of the court system be heavily taxed, but so will the resources of the *76 counties that will be required to hold these murderers in their local jails for extended periods of time while waiting for and conducting resentencing hearings. Each of these consequences would be unnecessary if the majority would simply apply the constitutionally valid, uniform, and Supreme Court sanctioned remedies of the FSMA. I respectfully dissent.