STROUD, Judge, concurring.
I concur with the majority opinion but write separately to note concern about how our courts are addressing their discretionary determination of whether juveniles should be sentenced to life imprisonment without possibility of parole.
On its face, North Carolina General Statute § 15A-1340.19B seems quite clear:
(c) The defendant or the defendant's counsel may submit mitigating circumstances to the court, including, but not limited to, the following factors:
(1) Age at the time of the offense.
(2) Immaturity.
(3) Ability to appreciate the risks and consequences of the conduct.
*588 (4) Intellectual capacity.
(5) Prior record.
(6) Mental health.
(7) Familial or peer pressure exerted upon the defendant.
(8) Likelihood that the defendant would benefit from rehabilitation in confinement.
(9) Any other mitigating factor or circumstance.
*125 N.C. Gen. Stat. § 15A-1340.19B (2015). But applying these factors has been difficult. Although the trial judge is required to find mitigating factors or the absence of mitigating factors to justify her decisions, and North Carolina General Statute § 15A-1340.19B(c) lists the factors which may be shown as mitigating factors, I am not sure that anyone understands what particular facts found within the factors should be considered as mitigating factors. For example, a trial court may find that a juvenile has done well in school; some may view this is a mitigating factor because it shows the juvenile's prior commitment to bettering himself and potential for improvement while others may view it as not mitigating as it demonstrates the juvenile has a high "[i]ntellectual capability" and thus a better "[a]bility to appreciate the risks and consequences of the conduct" than others his age might. Id. Likewise, should a trial court consider a juvenile's chaotic and violent upbringing as lacking any mitigating force, suggesting that he would not benefit from rehabilitation? Or should the trial court consider this as mitigating, since this sort of background may suggest that his behavior may have resulted from "familial or peer pressure exerted upon" him? Id.
The United States Supreme Court discussed exactly this sort of problem in Miller , as we noted in Lovette :
In Miller , in contrasting the cases of the two 14-year-old juveniles under consideration with juveniles in prior cases, the Supreme Court contrasted some of these characteristics of juveniles:
In light of Graham 's reasoning, these decisions too show the flaws of imposing mandatory life-without-parole sentences on juvenile homicide offenders. Such mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it. Under these schemes, every juvenile will receive the same sentence as every other-the 17-year-old and the 14-year-old, the shooter and the accomplice, the child from a stable household and the child from a chaotic and abusive one. And still worse, each juvenile (including these two 14-year-olds) will receive the same sentence as the vast majority of adults committing similar homicide offenses-but really, as Graham noted, a greater sentence than those adults will serve. In meting out the death penalty, the elision of all these *126 differences would be strictly forbidden. And once again, Graham indicates that a similar rule should apply when a juvenile confronts a sentence of life (and death) in prison.
Both cases before us illustrate the problem. Take Jackson's in Graham first. As noted earlier, Jackson did not fire the bullet that killed Laurie Troup; nor did the State argue that he intended her death. Jackson's conviction was instead based on an aiding-and-abetting theory; and the appellate court affirmed the verdict only because the jury could have believed that when Jackson entered the store, he warned Troup that we ain't playin, rather than told his friends that I thought you all was playin. To be sure, Jackson learned on the way to the video store that his friend Shields was carrying a gun, but his age could well have affected his calculation of the risk that posed, as well as his willingness to walk away at that point. All these circumstances go to Jackson's culpability for the offense. And so too does Jackson's family background and immersion in violence: Both his mother and his grandmother had previously shot other individuals. At the least, a sentencer should look at such facts before depriving a 14-year-old of any prospect of release from prison.
*589 That is true also in Miller's case. No one can doubt that he and Smith committed a vicious murder. But they did it when high on drugs and alcohol consumed with the adult victim. And if ever a pathological background might have contributed to a 14-year-old's commission of a crime, it is here. Miller's stepfather physically abused him; his alcoholic and drug-addicted mother neglected him; he had been in and out of foster care as a result; and he had tried to kill himself four times, the first when he should have been in kindergarten. Nonetheless, Miller's past criminal history was limited-two instances of truancy and one of second-degree criminal mischief. That Miller deserved severe punishment for killing Cole Cannon is beyond question. But once *127 again, a sentencer needed to examine all these circumstances before concluding that life without any possibility of parole was the appropriate penalty.
Miller , 567 U.S. at [478-79, 132 S.Ct. at 2469], 183 L.Ed.2d at 422-24 (citations, quotation marks, brackets, and footnote omitted). In this comparison, the Supreme Court demonstrates how a court might weigh the "hallmark features" in sentencing juveniles. Id. at [2468, 132 S.Ct. at 2468], 183 L.Ed.2d at 422-24.
State v. Lovette , 233 N.C. App. 706, 720-21, 758 S.E.2d 399, 409-10 (2014) (ellipses omitted).
Many cases from this Court citing North Carolina General Statute § 15A-1340.19B illustrate the problem: For example, in State v. James , the trial court made extensive findings of fact regarding the juvenile, but this Court remanded for additional findings since the order did not clearly identify which factors were considered as mitigating and which it considered as "not mitigating":
For example, and as pointed out by defendant, the trial court found in finding number twenty-three, defendant was once a member of the Bloods gang and wore a self-made tattoo of a B on his arm. Yet that finding further provided, as of October, 2005 defendant was no longer affiliated with the gang. He had been referred to the Charlotte Mecklenburg Police Department Gang of One program that worked with former gang members. This finding could be interpreted different ways-defendant was capable of rehabilitation or rehabilitative efforts had failed. Similarly, the trial court found in finding of fact number nine that at the time of the crime defendant was 16 years, 9 months old. While the finding makes clear that defendant was a juvenile, it is unclear whether defendant's age is mitigating or not. In finding of fact number twenty-six, the trial court found that individuals around the age of 16 can typically engage in cognitive behavior which requires thinking through things and reasoning, but not necessarily self-control. In that same finding, however, the trial court also found, things that may affect an individual's psycho-social development may be environment, basic needs, adult supervision, stressful and toxic environment, peer pressure, group behavior, violence, neglect, and physical and/or sexual abuse. The *128 trial court's other findings show that defendant has experienced many of those things found by the trial court to affect development.
Instead of identifying which findings it considered mitigating and which were not, after making its findings, the trial court summarized its considerations in finding of fact thirty-four as follows:
The Court, has considered the age of the Defendant at the time of the murder, his level of maturity or immaturity, his ability to appreciate the risks and consequences of his conduct, his intellectual capacity, his one prior record of juvenile misconduct (which this Court discounts and does not consider to be pivotal against the Defendant, but only helpful as to the light the juvenile investigation sheds upon Defendant's unstable home environment), his mental health, any family or peer pressure exerted upon defendant, the likelihood that he would benefit from rehabilitation in confinement, the evidence offered by Defendant's witnesses as to brain development in juveniles and adolescents, and all of the probative evidence offered by both parties as well as the record in this case.
*590 The Court has considered Defendant's statements to the police and his contention that it was his co-defendant who planned and directed the commission of the crimes against the victim, the Court does note that in some of the details and contentions the statement is self-serving and contradicted by physical evidence in the case. In the exercise of its informed discretion, the Court determines that based upon all the circumstances of the offense and the particular circumstances of the Defendant that the mitigating factors found above, taken either individually or collectively, are insufficient to warrant imposition of a sentence of less than life without parole.
This finding in no way demonstrates the absence or presence of any mitigating factors. It simply lists the trial court's considerations and final determination.
--- N.C. App. ----, 786 S.E.2d 73, 83-84 (2016) (citations, quotation marks, ellipses, and brackets omitted), appeal dismissed and disc.
*129 review allowed , --- N.C. ----, 796 S.E.2d 789, disc. review allowed , --- N.C. ----, 797 S.E.2d 6 (2017).
This Court remanded a similar order to that in James in State v. Antone , 240 N.C. App. 408, 770 S.E.2d 128 (2015). Compare James , --- N.C. App. ----, 786 S.E.2d at 83-84. After making brief findings of fact, including some recitations of testimony, regarding the juvenile's life, characteristics, and circumstances of the crime, the trial court determined there were "insufficient mitigating factors to find life with parole," and then this Court determined
that the trial court's findings of fact and order fail to comply with the mandate set forth in N.C. Gen. Stat. § 15A-1340.19C that requires the court to include findings on the absence or presence of any mitigating factors. The trial court's order makes cursory, but adequate findings as to the mitigating circumstances set forth in N.C. Gen. Stat. § 15A-1340.19B(c)(1), (4), (5), and (6). The order does not address factors (2), (3), (7), or (8). In the determination of whether the sentence of life imprisonment should be with or without parole, factor (8), the likelihood of whether a defendant would benefit from rehabilitation in confinement, is a significant factor.
240 N.C. App. 408, 412, 770 S.E.2d 128, 130 (2015).
I would note that the order on appeal in this case, although entered without jurisdiction and requiring remand for that reason, bears a striking resemblance to the orders in James and Antone in that it makes findings of fact regarding the defendant's life and upbringing but does not identify any particular factor as a mitigating or not mitigating factor. Compare James , --- N.C. App. at ----, 786 S.E.2d at 83-84 ; Antone , 240 N.C. App. at 412, 770 S.E.2d at 130. The order also finds that "the killing ... involved the shooting of the victim numerous times including one shot in the victim's back[,]" and it appears the trial court considered this as not mitigating, because it is the only finding listed after the trial court noted "[t]here are no further mitigating factors or circumstances." But the circumstances of the crime are not listed as one of the potential mitigating factors and "aggravating" factors are not part of the analysis under North Carolina General Statute § 15A-1340.19B. See N.C. Gen. Stat. § 15A-1340.19B.
Indeed, North Carolina General Statute § 15A-1340.19B identifies only potential mitigating factors, so factors can either be mitigating or not mitigating factors. See id. There is no consideration of what we may *130 in other contexts consider as "aggravating factors," so a factor which the trial court considers to support life imprisonment without the possibility of parole is referred to as a factor which is "not mitigating" instead of an aggravating factor. See generally id. This is an important distinction, although the negative phraseology which may be required to describe a factor that is "not mitigating"-but is also not "aggravating"-can be quite awkward. "Aggravating factors" apply in other situations of sentencing adults and typically must be determined by a jury based upon Blakely v. Washington , 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). See also N.C. Gen. Stat. § 15A-1340.16 ; State v. McQueen , 181 N.C. App. 417, 422, 639 S.E.2d 131, 134 (2007) ("In response to the ruling in Blakely , the North Carolina General Assembly *591 enacted a procedure for aggravating factors to be proven to a jury under N.C.G.S. § 15A-1340.16.") North Carolina General Statute § 15A-1340.19B is only dealing with the terrible and thankfully rare situation where a juvenile has committed such an atrocious crime he faces the possibility of life imprisonment without parole. See generally N.C. Gen. Stat. § 15A-1340.19B. North Carolina General Statute § 15A-1340.19B does not seem to envision much if any weight for the horrific nature of the crime, as would be appropriate in adult sentencing where both mitigating and aggravating factors are weighed. Contrast N.C. Gen. Stat. §§ 15A-1340.16 ; -1340.19B. Here, only mitigating factors or the lack thereof should be considered in the sentencing analysis. See N.C. Gen. Stat. § 15A-1340.19B.
Again, I would caution that almost all of the cases subject to North Carolina General Statute § 15A-1340.19B arose from heinous and shocking crimes; by definition, all are first degree murders, based on factors other than felony murder, see id. , committed by minors. See N.C. Gen. Stat. § 15A-1340.19A (2015). If the facts of the particular crime are treated as a factor which bears much weight in the analysis, then life imprisonment without the possibility of parole will be the rule and not the exception. But under Miller , life imprisonment without parole for juveniles should be the exception, not the rule:
But given all we have said in Roper , Graham , and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in Roper and Graham of distinguishing at this early age between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects *131 irreparable corruption. Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.
Miller v. Alabama , 567 U.S. 460, 479-80, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407, 424 (2012) (citations, quotation marks, and footnote omitted).
Furthermore, the Supreme Court has noted that a juvenile's past disadvantages should be an important factor in determining his culpability, noting that in a prior case:
a 16-year-old shot a police officer point-blank and killed him. We invalidated his death sentence because the judge did not consider evidence of his neglectful and violent family background (including his mother's drug abuse and his father's physical abuse) and his emotional disturbance. We found that evidence particularly relevant-more so than it would have been in the case of an adult offender. We held: Just as the chronological age of a minor is itself a relevant mitigating factor of great weight, so must the background and mental and emotional development of a youthful defendant be duly considered in assessing his culpability.
Id. at 476, 132 S.Ct. at 2467, 183 L.Ed.2d at 422 (citation, quotation marks, and brackets omitted). Of course, imposition of a sentence of life imprisonment with the possibility of parole is still not a guarantee that a defendant will ever be released, and no one can predict how a juvenile may change, for better or worse, over the passing decades of his life.[3] As the United States Supreme Court noted, it is a "rare juvenile offender whose crime reflects irreparable corruption." Id. at 279-80, 132 S.Ct. at 2469, 183 L.Ed.2d at 424.
Both trial courts and appellate courts normally consider only the case before the court and not how that case may compare to other similar cases. And I do not know the statistics regarding *132 the percentages of juveniles who have been eligible to be sentenced to life imprisonment without the possibility of parole who have actually received this sentence *592 instead of the possibility of parole. I do not know the statistics regarding the percentages of juveniles who have been eligible to be sentenced to life imprisonment without the possibility of parole who have actually received this sentence instead of the possibility of parole, but according to Miller , that percentage should be very small. Id. Convictions of juveniles for first degree murder are rare, and within that pool of eligible juveniles who have committed these crimes, sentences of imprisonment for life without the possibility of parole should be "uncommon" as well, if our courts are to comply with the law as set forth by the United States Supreme Court. Id.

North Carolina General Statute § 15A-1340.19A provides that a sentence of "life imprisonment with parole" requires that "the defendant shall serve a minimum of 25 years imprisonment prior to becoming eligible for parole." N.C. Gen. Stat. § 15A-1340.19A (quotation marks omitted).